**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NEIL L. FISHER d/b/a Paragon Anesthesia** | § | |
| **Associates, PARAGON AMBULATORY** | § | |
| **HEALTH RESOURCES LLC, and** | § | |
| **PARAGON OFFICE SERVICES, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:10-CV-2652-L-BK** |
| | § | |
| **BLUE CROSS BLUE SHIELD OF** | § | |
| **TEXAS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Order of Reference* (Doc. 20), Defendant's motions to dismiss (Docs. 5-7, 15) and *Motion to Dismiss and Motion Compel Arbitration as to all Parties, Alternatively, Motion to Sever and Compel Arbitration as to Paragon Anesthesia Associates and, Motion to Stay Case* (Doc. 14), have been referred to the undersigned for findings, conclusions, and recommendation. After reviewing the motions, relevant pleadings and applicable law, the Court recommends that Defendant's motions to dismiss (Docs. 5-7, 15) be DENIED, and that its *Motion to Dismiss and Motion Compel Arbitration as to all Parties, Alternatively, Motion to Sever and Compel Arbitration as to Paragon Anesthesia Associates and, Motion to Stay Case* (Doc. 14), be GRANTED in part.

## I. BACKGROUND

This case was brought in state court on November 17, 2010, and subsequently removed to federal court by Defendant, Blue Cross Blue Shield of Texas (BCBSTX) on December 30, 2010. (Doc. 1 at 1). Thereafter, on January 24, 2011, BCBSTX filed motions to dismiss Plaintiffs'

*Original Petition* under Federal Rules of Civil Procedure 12(b)(1), (b)(6), and (b)(7). (Docs. 5-7). On February 14, 2011, Plaintiffs filed their *First Amended Complaint* (Doc. 8), and in response, BCBSTX filed a *Motion to Dismiss and Motion Compel Arbitration as to all Parties, Alternatively, Motion to Sever and Compel Arbitration as to Paragon Anesthesia Associates and, Motion to Stay Case* (Doc. 14), and a *Motion to Dismiss Plaintiffs' First Amended Complaint* (Doc. 15). In the latter, BCBSTX requests that its previous motions to dismiss (Docs. 5-7) apply to Plaintiffs' *First Amended Complaint*. BCBSTX further indicates that it is only urging its original motions to dismiss subject to the Court's denial of its *Motion to Dismiss and Motion Compel Arbitration as to all Parties, Alternatively, Motion to Sever and Compel Arbitration as to Paragon Anesthesia Associates and, Motion to Stay Case*. (Doc. 16 at FN 2, Doc. 17 at FN 2, 18 at FN 2).

**Relevant Facts**[1]

Plaintiffs are three separate companies, allegedly owned by the same person, that provide anesthesia services to obstetricians/gynecologists during in-office surgeries. (Doc. 8 at 2; Doc. 14 at 15). Plaintiffs filed suit against BCBSTX alleging that BCBSTX failed to pay Plaintiffs for services performed for BCBSTX's insureds and that BCBSTX also improperly sought to recoup past compensation paid to Plaintiffs.[2] (Doc 8. at 5-15).

Plaintiff, Neil L. Fisher, M.D., P.A., d/b/a Paragon Anesthesia Associates, P.A. ("PAA"),

---

[1] For the purposes of these motions to dismiss, the Court takes all allegations pled in Plaintiffs' *First Amended Complaint* as true and correct. *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[2] Plaintiffs are specifically alleging breach of an express contract, breach of implied contracts, fraud, theft of services, *quantum meruit*, unjust enrichment, tortious interference, defamation and business disparagement, and equitable and quasi-estoppel.

entered into a Group Managed Care Agreement ("the Agreement") with BCBSTX, which establishes what BCBSTX is to pay PAA for services that are provided "in-network." (Doc. 8-1, *passim*). The agreement also contains a dispute resolution provision. (Doc. 8 at 4-5; Doc. 8-1 at 15-18).

The two remaining Plaintiffs, Paragon Office Services ("POS") and Paragon Ambulatory Health Resources ("PAHR"), aver that they have implied contracts with BCBSTX based on their course of dealing. (Doc. 8 at 4, 6-8). PAA provided anesthesia services to BCBSTX's insureds and billed BCBSTX on an "in-network" basis, while PAHR provided anesthesia services to BCBSTX's insureds and billed BCBSTX on an "out-of-network" basis. (Doc 8 at 5-7). POS provided the equipment for the anesthesia service and billed according to the patients "in-network" or "out-of-network" status. (Doc. 8 at 7). Plaintiffs further contend that they were previously paid for their services by BCBSTX, but that BCBSTX is now denying current payments and seeking to recoup past payments. (Doc. 8 at 8). In addition, Plaintiffs aver BCBSTX made false representations to physicians and patients. (Doc. 8 at 9, 11-14).

### **Issues Presented**

In its motions to dismiss, Defendant argues that the dispute resolution provision in the Agreement is mandatory as to all parties and, alternatively, that the Agreement is mandatary to PAA and that the remaining claims brought by PAHR and POS should be stayed. (Doc. 14). In addition, Defendant contends Plaintiffs' claims should be dismissed under Fed.R.Civ.P. 12(b). (Doc. 5-7). Thus, the Court now considers: (1) whether the dispute resolution provision in the Agreement between PAA and BCBSTX is permissive or mandatory; (2) whether the dispute resolution provision applies to PAHR and POS; (3) if some claims are subject to the dispute

resolution provision, whether any remaining claims should be stayed; and (4) whether any of Plaintiffs' claims not subject to mandatory dispute resolution should be dismissed pursuant to Defendant's 12(b) motions.

## II. ANALYSIS

### *A. The Dispute Resolution Provision*

The Court first addresses whether the dispute resolution provision in the Agreement is permissive or mandatory. It states:

> BCBSTX or [PAA], as the case may be, shall give Notice to the others of the existence of a dispute. In order to avoid the cost and time consuming nature of litigation, any dispute between BCBSTX and [PAA] arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between BCBSTX and [PAA] *shall* be resolved using alternative dispute resolution mechanism instead of litigation. BCBSTX and [PAA] agree and acknowledge that it is their mutual intention that this provision be construed broadly so as to provide for mediation and/or arbitration of all disputes arising out of their relationship as third-party Payer and [PAA].

(Doc 8-1 at 15-16) (emphasis added). The agreement also allows PAA to subject certain disputes to an external review process that is binding on all the parties. (Doc. 8-1 at 16). If PAA does not make such election, the parties may agree to meet and attempt to resolve the dispute. (Doc. 8-1 at 16). "If no meeting is mutually agreed, or if the dispute is not resolved . . . the party giving the initial notice ***shall*** submit the dispute to mediation." (Doc. 8-1 at 16) (emphasis added). Finally, "[i]n the event [PAA] ha[s] not made an External Review Election and mediation is not successful in resolving the dispute, either [party] may submit the dispute to final and binding arbitration." (Doc. 8-1 at 16-17).

### (1) As Applied To PAA

Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003). Here, the Agreement explicitly provides that PAA and BCBSTX are bound by it. Both parties signed the Agreement, which states it "contains the entire understanding between the parties." (*See* Doc. 8-1 at 17).

It is also clear that the Agreement mandates the resolution of any disputes arising between the parties through the use of alternative dispute resolution, instead of litigation, and that PAA agreed to follow the procedures required in "Part X, General Provisions, Section 1, Dispute Resolution" should PAA have a complaint or a dispute arising from over payments, under payments, or deductions. (Doc. 8-1 at 8-10, 15).

While Plaintiffs correctly point out the Agreement provides that "either [party] may submit the dispute to final and binding arbitration" if the other specified dispute resolution procedures are not successful (Doc. 8-1 at 16-17), that language in no way vitiates the requirement under the Agreement for mandatary dispute resolution. In fact, by signing the contract, PAA acknowledged that the "arbitration provision precludes [PAA] from filing an action at law or in equity and from having any dispute covered by [the] Agreement resolved by judge or jury." (Doc. 8-1 at 17). Therefore, the Court concludes that the dispute resolution provision of the Agreement is mandatory as to PAA, and thus binds BCBSTX and PAA to resolve the current claims in accordance with the dispute resolution provision insofar as they concern the subject matter outlined in the Agreement.

Plaintiffs also argue that their claims fall outside of the arbitration agreement because

their claims concern the "rate of compensation," and are thus expressly excluded from the arbitration provision. The Court is not persuaded by this argument as the crux of Plaintiffs' *First Amended Complaint* appears to be that Plaintiff's were not paid for their services, rather than a disagreement with the rate of compensation for their services. The Agreement expressly provides that a complaint or a dispute arising from over payments or under payments is covered by the dispute resolution provision. (Doc. 8; Doc. 8-1 at 8-10, 15).

Further, Plaintiffs argue BCBSTX has waived arbitration by failing to comply with a condition precedent to the arbitration provision, specifically that the parties first participate in mediation. (Doc. 21 at 9). The Court is also not persuaded by this argument. When a matter is submitted to arbitration, the issues of condition precedent and waiver should be submitted to the arbitrator to resolve. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also In re R&R Pers. Specialists of Tyler, Inc.,* 146 S.W.3d 699, 705 (Tex. App. – Tyler 2004) (holding questions of procedural arbitrability, which encompass determinations of whether conditions precedent to arbitration have been met, are for the arbitrator to decide).

In addition, Plaintiffs contend that the extra-contractual claims for fraud, theft of services, unjust enrichment, *quantum meruit*, tortious interference, defamation and business disparagement, and estoppel are not subject to the Agreement. (Doc. 21 at 6-8). Under Texas law,[3] whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint instead of the legal causes of action asserted. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998)(citing *X.L. Ins. Co., Ltd. v.*

---

[3] The Court notes that pursuant to the parties Agreement, the scope of the Agreement is governed by Texas law. (Doc. 8-1 at 18); *Ford*, 141 F.3d at 248 (holding parties have the contractual freedom to limit the scope of an arbitration clause).

*Hartford Accident & Indem. Co.*, 918 S.W.2d 687, 689 (Tex.App.1996, writ requested)).  A tort claim, is arbitrable if it is so interwoven with the contract that it could not stand alone, but is not arbitrable if it is completely independent of the contract and could be maintained without reference to a contract.  *Ford*, 141 F.3d at 250(citing *X.L. Ins. Co.*, 918 S.W.2d at 689).

After reviewing Plaintiffs' *First Amended Complaint*, the Court finds that PAA's claims for fraud, theft of services, unjust enrichment, *quantum meruit*, and estoppel are so interwoven with the contract that they cannot stand alone.  These claims are either plead in the alternative to a finding of an expressed contractual obligation, or are connected to BCBSTX's duties under the Agreement and cannot be maintained without reference to the Agreement.  (*See* Doc 8). However, the Court finds that PAA's claims of tortious interference, and defamation and business disparagement can stand alone and, therefore, are not subject to mandatory arbitration under the Agreement.

Accordingly, the Court recommends that Plaintiff PAA's claims for breach of contract, fraud, theft of services, unjust enrichment, *quantum meruit*, and estoppel be dismissed with prejudice, and that PAA and BCBSTX be ordered to participate in the dispute resolution procedures outlined in the Agreement.  *See* 9 U.S.C. § 4 (stating "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . .  for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"); *Granite Rock Co. v. Inter'l Brotherhood Of Teamsters*, 130 S. Ct.

2847, 2859 n. 8 (2010) (stating "where a party invokes the jurisdiction of a federal court over a matter that the court could adjudicate but for the presence of an arbitration clause, '[t]he court shall hear the parties' and 'direc[t] the parties to proceed to arbitration in accordance with the terms of the agreement'"). PAA's remaining claims for tortious interference, and defamation and business disparagement are addressed in further detail below

### (2) As Applied To PAHR and POS

Next, the Court turns to whether the dispute resolution provision of the Agreement encompasses the claims of PAHR and POS. Federal courts have held that so long as there is a written agreement to arbitrate, a third party may be bound to submit to arbitration. *Bridas*, 345 F.3d at 355. Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so. *Id*. Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary. *Id*. Here, alter ego and estoppel are the only two theories which BCBSTX argues bind PAHR and POS to the mandatory arbitration terms of the Agreement.

Defendant, citing to *Grigson v. Creative Artists Agency*, first argues that PAHR and POS should be estopped from asserting that they are not bound by the arbitration agreement because Plaintiffs' claims are substantially interdependent. (Doc. 14 at 13-14); 210 F.3d 524 (5th Cir. 2000). However, the Court of Appeals for the Fifth Circuit has specifically held that the *Grigson* holding does not apply to the current situation. *Bridas*, 345 F.3d at 361. *Grigson* estopped a signatory plaintiff from relying upon the defendants' status as a nonsignatory to prevent the defendants from compelling arbitration under the agreement. *Id*. at 360 (citing

*Grigson*, 210 F.3d at 526-28). The Fifth Circuit later clarified that "because arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *Bridas*, 345 F.3d at 361. The simple fact that Plaintiffs' claims are inextricably intertwined, is insufficient, standing alone, to justify the application of equitable estoppel. *Id*. Therefore, the Court does not find Defendant's argument persuasive.

Defendant additionally argues that PAHR and POS should be subject to the arbitration provision under the alter-ego theory. (Doc. 14 at 15). "Under the alter ego doctrine, a corporation may be bound by an agreement entered into by its subsidiary regardless of the agreement's structure or the subsidiary's attempts to bind itself alone to its terms, 'when their conduct demonstrates a virtual abandonment of separateness.'" *Bridas*, 345 F.3d at 359 (citations omitted). However, "[c]ourts do not lightly pierce the corporate veil even in deference to the strong policy favoring arbitration." *Id*. (citation omitted). The corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Id*. Alter ego determinations are highly fact-based, and require considering the totality of the circumstances in which the instrumentality functions, and no single factor is determinative.[4] *Id*.

_____

[4] Those factors normally explored in the context of parent-subsidiary alter ego claims, are whether: (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the

Here, even assuming that one owner exercised complete control over the Plaintiff corporations, Defendant has failed to show that such control was used to commit a fraud or a wrong that injured the Defendant. In addition, beyond the fact that Defendant alleges the Plaintiffs share the same directors or officers, the Defendant has wholly failed to even mention, much less offer evidence, regarding any of the other factors to be considered. Furthermore, the Agreement between PAA and BCBSTX specifically states that it "constitutes a contract *solely* between [PAA] and BCBSTX." (Doc. 8-1 at 15)(emphasis added). Considering the totality of the circumstances and lack of evidence, and because the Court does not lightly pierce the corporate veil, the Court also finds this argument not persuasive. Therefore, the Court concludes PAHR and POS are not subject to the dispute resolution provision of the Agreement.

### B. Defendant's 12(b) motions

Because PAHR and POS are not subject to mandatory arbitration under the Agreement, and neither are PAA's claims for tortious interference and defamation, and the Court next considers Defendant's 12(b) motions to dismiss as to those claims/parties. As an initial matter, Defendant's argument under 12(b)(1), 12(b)(6) and 12(b)(7) that the parties lack capacity fails because Plaintiffs have remedied any insufficiencies complained of by re-pleading the parties in their *First Amended Complaint*.[5] In addition, Defendant's 12(b)(1) motion alleges Plaintiffs did

_____

subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities. *Bridas*, 345 F.3d at 360 n. 11.

[5] Defendant's 12(b)(1) motion argued the Plaintiffs did not have standing because PAA was misnamed. (Doc. 5 at 4-5). In its 12(b)(6) motion Defendant also argued the parties lacked capacity to sue and be sued because the parties were misnamed. (Doc. 7 at 8-11). Further,

not establish their individual standing to sue. (Doc. 5). However, the Court finds all Plaintiffs have standing. Even though Plaintiff's reference themselves collectively as Paragon, they have nonetheless asserted they have been individually harmed by Defendant and merely refer to themselves collectively in reference to the causes of action they all assert based on identical circumstances. *See Ensley v. Cody Rescources, Inc.*, 171 F.3d 315, 319 (5th Cir. 1999) (stating the minimal standing requirement is: "(1) injury-in-fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision"). The Court now address Defendant's remaining 12(b)(6) arguments in turn.[6]

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief may be granted. When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Dismissal is required when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

---

Defendant's 12(b)(7) motion avers Plaintiffs misnamed the parties and thus failed to include the real parties to the litigation. (Doc. 6 at 3-6).

[6] The Court does not reach Defendant's 12(b)(6) argument against Plaintiffs' breach of an expressed contract claim because, as set forth above, the Court concludes that the Agreement covers PAA and BCBSTX, and recommends dismissal in lieu of its dispute resolution provisions. Furthermore, Defendant does not challenge PAHR and POS's contention that they have only an implied contract with BCBSTX. (Doc. 9 at 5-8).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975. The Fifth Circuit has explained that the Rule 12(b)(6) standard "'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir.2008). Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1950. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*.

### *(1) PAHR and POS's Breach of Implied Contract Claim*

Defendant avers Plaintiffs' breach of an implied contract claim should be dismissed for failure to allege the implied contractual obligations. (Doc. 7 at 12). Rule 8(a) does not require a plaintiff to plead these elements in detail; however, the plaintiff must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the

claim. *American Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F.Supp.2d 744, 753 (N.D. Tex. 2005).

"In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract, plaintiff's compliance with its terms, breach, and damages." *Wilson*, 2007 WL 2285947 at *3 (citing *Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1 st Dist .] 2001, no pet.)). Under Texas law, a contract implied in fact is the same as an express contract except for the manner of proof. *Buxani v. Nussabaum*, 940 S.W.2d 350, 352 (Tex.App.– San Antonio 1995, no writ). The existence of a contract can be implied from the parties' actions and conduct that indicate a mutual intent to be bound to their respective obligations. *Railroad Mgmt. Co., L.L.C., v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).

Plaintiffs' *First Amended Complaint* alleges an implied contract existed between PAHR and BCBSTX and between POS and BCBSTX based on the parties course of dealing. (Doc. 8 at 7). Further, Plaintiffs allege they complied with the terms of the implied contract by performing services for BCBSTX's insureds, that BCBSTX breached the implied contract by failing to pay Plaintiffs for their services, and that such failure to pay has damaged the Plaintiffs. (Doc. 8 at 7-8). Thus, Plaintiffs' *First Amended Complaint* describes the allegations for breach of an implied contract in a sufficiently specific manner to give Defendant notice of the nature of the claim and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### *(2) PAHR and POS's Fraud Claim*

Defendant argues that Plaintiffs' fraud claim should be dismissed because it is not sufficiently plead under FED.R.CIV.P. 9(b).

Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998). In addition, Rule 9(b) states "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiffs have alleged that BCBSTX "knowingly, intentionally, and maliciously made fraudulent representations to Paragon . . . promising to pay for Paragon's anesthesia services, when it had no intention of doing do." (Doc. 8 at 8-9). Furthermore, Plaintiff's allege they "did in fact justifiably rely on those false representations to provide the services for which [BCBSTX] now refuses to pay, [and] [BCBSTX]'s fraud is a proximate cause of injury to Paragon." (Doc. 8 at 9-10). The Court finds that Plaintiffs have presented well-pled factual allegations regarding their fraud claim, that at the very least, infer that evidence on the material points of Plaintiffs' fraud will be introduced at trial. *Campbell*, 43 F.3d at 975. Therefore, the Court finds Plaintiffs have properly pled a claim for fraud that gives the Defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### *(3) PAHR and POS's Theft of Services Claim*

Defendant next argues that Plaintiffs fail to plead a claim for theft of services because they do not specify any statutory basis in the Texas Penal Code for their claim. (Doc. 7 at 15-16). In addition, Defendant avers Plaintiffs' claim fails because Plaintiffs neglect to link intent

to the inception of service. (Doc. 7 at 15-17). The Court finds these arguments unpersuasive. First, Plaintiffs have titled their cause of action "Theft of Services," which is the title of one of the specified penal codes that is incorporated into the definition of theft. *See* Tex. Civ. Prac. & Rem. Code § 134.002(2); Tex. Penal Code § 31.04. Secondly, under section 31.04, intent can be presumed if "the actor failed to make payment under a service agreement within 10 days after receiving notice demanding payment." Therefore, the Court finds Plaintiffs have properly pled a claim for theft of services that gives the Defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### *(4) PAHR and POS's Quantum Meruit Claim*

Defendant avers Plaintiffs' *quantum meruit* claims should be dismissed because BCBSTX received no benefit from Plaintiffs. (Doc. 7 at 17). To prevail on a *quantum meruit* claim in Texas, a plaintiff must establish the following elements: (1) he provided valuable services or materials for the defendant; (2) the defendant accepted the services or materials; and (3) the defendant had reasonable notice that the plaintiff expected compensation for the services or materials. *Wilson*, 2007 WL at *4 (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990)). In Texas, *quantum meruit* is appropriate only where the plaintiff provides valuable services specifically for the defendant, not merely where the services benefitted the defendant. *Eagle Metal Prod., LLC v. Keymark Enter.*, LLC, 651 F.Supp.2d 577, 595-96 (N.D. Tex. 2009).

While it is true that the immediate beneficiaries of the medical services were the patients, and not Defendant, taking the facts alleged in Plaintiffs' *First Amended Complaint* as true and correct, BCBSTX received the benefit of having its obligations to its plan members

discharged.  *See El Paso Health Care Systems, LTD v. Molina Healthcare of New Mexico*, 683

F.Supp.2d 454, 461-62 (W.D. Tex. January 21, 2010); *see also Weiner v. Tex. Health Choice,*

*L.C.*,  No. 3:01-CV-2580-M, 2002 WL 441428, * 4 (N.D. Tex. March 20, 2002) (allowing

plaintiff's claim for *quantum meruit* to move forward against insurance company for providing

the medical services necessary to extinguish defendant's contractual obligations to its insured

beneficiaries).  Therefore, the Court concludes Plaintiffs have properly pled a claim for *quantum*

*meruit* that gives the Defendant fair notice of what the claim is and the grounds upon which it

rests.  *Twombly*, 550 U.S. at 545.

### (5) PAHR and POS's Unjust Enrichment Claim

Defendant avers Plaintiffs' unjust enrichment claim should be dismissed because unjust

enrichment is not an independent cause of action.  (Doc. 7 at 18).  However, the Texas Supreme

Court, the Court of Appeals for the Fifth Circuit, and federal courts sitting in Texas have

specifically recognized claims for unjust enrichment.  *See, e.g., Heldenfels Bros. v. City of*

*Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ( "party may recover under the unjust enrichment

theory when one person has obtained a benefit from another by fraud, duress, or the taking of an

undue advantage"); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Eagle*

*Metal Prod., LLC v. Keymark Enter., LLC*, 651 F.Supp.2d 577, 591 (N.D. Tex. Aug. 17, 2009)

("[w]hile there is considerable disagreement about whether unjust enrichment stands as an

independent cause of action, where, as here, a plaintiff has pled causes of action underlying the

unjust enrichment claim that provide jurisdiction, there is also jurisdiction over the plaintiff's

unjust enrichment theory of recovery").  In addition, under FED.R.CIV.P. 8(a)(3), a party is

entitled to plead claims in the alterative as Plaintiffs do here.  Therefore, the Court concludes

Plaintiffs have properly pled a claim for unjust enrichment that gives the Defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### *(6) Plaintiffs' Tortious Interference Claim*

Defendants aver that Plaintiffs' tortious interference claim should be dismissed because Plaintiffs have failed to allege any existing contract with a third party, a reasonable probability they would have entered into a contract, an independently tortious act by the Defendant, or a conscious desire to prevent the contractual relationship from happening. (Doc. 7 at 19-20).

The elements of a cause of action for tortious interference with an existing contract are: (1) the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). The elements of a cause of action for tortious interference with a prospective business relationship are: (1) a reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an intentional or malicious act by the defendant that prevented the relationship from occurring with the purpose of harming the plaintiff; (3) lack of privilege or justification for the act; and (4) actual harm or damage incurred as a result of the defendant's interference. *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 413-14 (Tex.App.-Waco 2001, pet. denied).

Here, Plaintiffs specifically allege they had contracts with physicians and that BCBSTX "engaged in acts which made it more difficult or prevented Paragon from performing anesthesia services by engaging in a concerted scheme to convince physicians not to do business with Paragon," citing specific examples. (Doc. 8 at 11-13). In addition, Plaintiffs aver BCBSTX has

also "contacted at least one Paragon patient, informing them that Paragon is being investigated for fraud for billing for services that were allegedly not provided by Paragon, and instructing the patient not to pay any amounts to Paragon." (Doc. 8 at 13). Plaintiffs claim that "[i]n addition to interfering with existing contracts, there was a reasonable probability and expectation that Paragon would have entered into business relationships with other physicians and patients, but for [BCBSTX]'s intentional interference and wrongful acts," and that "[a]s a direct and proximate result of [BCBSTX]'s interference, Paragon has suffered, and will continue to suffer, damages resulting from the loss of contracts with physicians and patients." (Doc. 8 at 12-13). The Court finds Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements, and therefore, the Court concludes Plaintiffs have properly pled a claim for tortious interference that gives the Defendant fair notice of what the claim is and the grounds upon which it rests. *In re S. Scrap Material Co.*, 541 F.3d at 587; *Twombly*, 550 U.S. at 545.

### *(7) Plaintiffs' Defamation and Business Disparagement Claims*

Defendant further avers that Plaintiffs' defamation and business disparagement claims should be dismissed because Plaintiffs have failed to plead the proper elements. (Doc. 7 at 21). Specifically, Defendant argues Plaintiff has not properly pled the element of negligence to satisfy their defamation claim, and have not specifically pled special damages as an element of their business disparagement claim. (Doc. 7 at 21-23). In addition, Defendant avers Plaintiffs' claims should be dismissed for failure to allege the maker of the defamatory statements, the date the statements were made, or where the statements occurred. (Doc. 7 at 22-23).

"In order to assert separate and distinct claims for defamation and business

disparagement, a plaintiff must allege economic harm beyond the defamatory injury to plaintiff's reputation, such as specific lost sales." *Marquis v. OmniGuide, Inc.*, No. 3:09-CV-2092-D, 2011 WL 321112, *6 (N.D. Tex. Jan. 28, 2011)*.  Under Texas law, the elements of a defamation claim are:  (1) published a statement about the plaintiff, (2) that was defamatory, (3) while acting with negligence if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998).   The elements of business disparagement are publication, falsity, malice, lack of privilege, and special damages.  *Marquis*, 2011 WL at *6 (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987).

The Court finds Plaintiffs have sufficiently pled the element of negligence by stating "[BCBSTX] knew or should have known" the statements they made were false.  (Doc. 8 at 14); *See Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex.1976) (negligence standard is that defendant knew or should have known that statement was false).  In addition, while Plaintiffs have not plead when the statements were made or where the statements occurred, Plaintiffs have presented factual allegations that support their claim for business disparagement. Plaintiffs aver that BCBSTX "by and through its agents and employees including investigators Charlotte Naubauer and Alma Willis, informed patients, physicians (including Drs. Norton, Ward, Dooley, and White), and the Texas Medical Board that Paragon fraudulently billed for services it did not provide, and that [BCBSTX] was not required to pay for Paragon's anesthesia services," which resulted in "direct pecuniary loss to Paragon, in the form of lost payment for anesthesia services rendered, and lost payments for future payments that may never be rendered as a result [o]f the defamatory statements."  (Doc. 8 at 14).

The Rule 12(b)(6) standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587. The Court concludes that Plaintiffs' accusations raise a reasonable expectation that discovery will reveal evidence that sufficiently support Plaintiffs' defamation and business disparagement claims. Therefore, the Court concludes Plaintiffs have properly pled claims for defamation and business disparagement that give the Defendant fair notice of what the claims are and the grounds upon which they rest. *Twombly*, 550 U.S. at 545.

### *(8) PAHR and POS's Estoppel Claims*

Lastly, Defendant avers Plaintiffs' estoppel and quasi-estoppel claims should be dismissed because they are not supported by specific facts. Specifically, Defendant avers Plaintiffs have failed to allege false representation by BCBSTX, or that BCBSTX concealed material facts, to support Plaintiffs' estoppel claim, and Plaintiffs' quasi-estoppel claim fails because no benefit was conferred to BCBSTX. (Doc. 7 at 24). Under Texas law, the doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Ulico Cas. Co. V. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)(citation omitted). The doctrine of quasi-estoppel "applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz*, 22 S.W.3d 857, 864 (Tex. 2000).

The Court finds Plaintiffs have properly pled that BCBSTX made false representations

or concealed material facts, along with the remaining elements to support their estoppel claim.

Plaintiffs allege BCBSTX made the false representation that it would pay for Paragon's services through the parties course of dealing, with "knowledge . . . of all the facts" and the "intention that Paragon [would] rely"on such false representation, and that Plaintiffs "detrimentally relied on [BCBSTX]'s representations," and that Plaintiffs were "wholly without knowledge. . . of [BCBSTX]'s . . . change of position on the payment for its services." (Doc. 8 at 15). In addition, as indicated previously, the Court has determined Defendant did receive a benefit from Plaintiffs, taking the facts alleged in Plaintiffs' *First Amended Complaint* as true and correct. Therefore, the Court concludes Plaintiffs have properly plead claims for estoppel and quasi-estoppel that give the Defendant fair notice of what the claims are and the grounds upon which they rest. *Twombly*, 550 U.S. at 545.

### C. Defendant's Motion to Stay

Defendant additionally argues that all claims not dismissed in lieu of mandatory arbitration should be stayed pending the conclusion of the arbitration "[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of arbitration [and] that decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem. Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 20 n.23 (1983). While some courts have found a stay to be appropriate because continuing litigation could negatively impact arbitration, such does not appear to be the situation here. *See Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000); *Waste Mgmt., Inc. v. Residuos Indus. Multiquim, S.A.*, 372 F.3d 339, 345 (5th Cir. 2004). Here, the claims in arbitration will revolve around an express contract while the claims remaining in this Court will revolve around an implied contract and torts that, as Plaintiff

argues, are in not connected to the Agreement. In addition, because the Agreement has specific time limits regarding the dispute resolution procedures it mandates, there likely will be no negative impact caused by this case moving forward, as the parties should be able to complete arbitration before disposing of the remaining pending claims. Therefore, the Court recommends against staying the remaining claims pending arbitration.

### III. CONCLUSION

For the foregoing reasons, it is recommended that Defendant's motions to dismiss (Docs. 5-7, 15) be **DENIED.** It is further recommended that Defendant's *Motion to Dismiss and Motion Compel Arbitration as to all Parties, Alternatively, Motion to Sever and Compel Arbitration as to Paragon Anesthesia Associates and, Motion to Stay Case* (Doc. 14) be **GRANTED in part**, and that Paragon Anesthesia Associates's claims for breach of contract, fraud, theft of services, unjust enrichment, *quantum meruit*, and estoppel be dismissed with prejudice, and the parties ordered to proceed to dispute resolution as outlined in the Agreement.

**SIGNED** June 27, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE