IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NEAL FISHER, M.D.**, *d/b/a* **PARAGON ANESTHESIA ASSOCIATES, P.A., PARAGON OFFICE SERVICES, LLC, PARAGON AMBULATORY HEALTH RESOURCES, LLC, PARAGON AMBULATORY PHYSICIAN SERVICES, LLC, and OFFICE SURGERY SUPPORT SERVICES, LLC,** | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. **3:10-CV-2652-L** |
| **BLUE CROSS and BLUE SHIELD OF TEXAS,** *a Division of Health Care Service Corporation, a Mutual Legal Reserve Company*, | § | |
| Defendant, | § | |
| v. | § | |
| **NEIL L. FISHER, M.D.,** *a/k/a Neal Leon Fisher, M.D.*, | § | |
| Third-Party Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs[']/Counter Defendants' Motion for Partial Dismissal of Counterclaims, filed October 12, 2011. After carefully considering the motion, response, reply, record, and applicable law, the court **grants in part and denies in part** Plaintiffs[']/Counter Defendants' Motion for Partial Dismissal of Counterclaims.

## I. Factual and Procedural Background

Plaintiffs Neil L. Fisher, M.D., doing business as Paragon Anesthesia Associates, P.A. ("PAA"); Paragon Office Services, LLC ("POS"); Paragon Ambulatory Health Resources, LLC ("PAHS"); Paragon Ambulatory Physician Services, LLC ("PAPS"); and Office Surgery Support Services, LLC ("OSS") (collectively, "Plaintiffs" or "Paragon") filed a civil action against Defendant Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("Defendant" or "BCBSTX") on November 17, 2010, in the 298th Judicial District Court for Dallas County, Texas. Defendant removed the state court action to this court on December 30, 2010, alleging that diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of costs and interest.

The court sets forth the background facts as asserted in Plaintiffs' Second Amended Complaint ("Complaint") and Defendant's Answer to Plaintiffs' Second Amended Complaint, Third Party Complaint, Counterclaims, and Request for Declaratory Judgment ("Answer").[1] Plaintiffs provide anesthesia services to obstetricians and gynecologists who perform in-office surgeries, such as endometrial ablations, which are procedures to remove or destroy the inner lining of the uterus. Compl. ¶ 9. PAA entered into a Group Managed Care Agreement that expressly provides for the payment of professional anesthesia services furnished by an

[1] Plaintiffs' Second Amended Complaint ("Complaint") and Defendant's Answer to Plaintiffs' Second Amended Complaint, Third Party Complaint, Counterclaims, and Request for Declaratory Judgment ("Answer") are the live pleadings in this case. At the time of the filing of Plaintiffs[']/Counter Defendants' Motion for Partial Dismissal of Counterclaims, Plaintiffs' First Amended Complaint and Defendant's First Amended Answer to Plaintiffs' First Amended Complaint, Third Party Complaint, Counterclaims, and Request for Declaratory Judgment were the live pleadings in this case. The court cites to and relies on Plaintiffs' Second Amended Complaint and Defendant's Answer thereto, as they do not differ materially from Plaintiffs' First Amended Complaint and Defendant's Answer thereto, with the exception of the removal of Plaintiff's breach of express contract claim and the addition of the parties Paragon Ambulatory Physician Services, LLC; Office Surgery Support Services, LLC; and Neil L. Fisher, M.D., also known as Neil Leon Fisher, M.D.

anesthesiologist.[2] Compl. ¶ 12. Plaintiffs assert that PAPS entered into ParPlan provider agreements with Defendant and that POS, PAHS, and OSS have implied contracts with BCBSTX for the payment of professional anesthesia and equipment services. *Id.* Plaintiffs allege that since 2004, Defendant has paid Paragon for anesthesia services, but beginning in July 2010, it began to: (1) deny further payments to Paragon, and (2) recoup amounts previously paid to Paragon. Compl. ¶ 14. Plaintiffs contend that in July 2010, the Blue Cross Special Investigations Department conducted an evaluation of services furnished by Paragon from January 1, 2004, through June 30, 2010, and since the evaluation, Defendant has violated the parties' express and implied contracts and state law by, *inter alia*, (1) refusing to pay for services and retaining money that Defendant had already received for such services, and (2) demanding return of monies paid to Paragon. Compl. ¶ 15. Paragon asserts that there is no dispute that their anesthesia services are covered services or that BCBSTX has received money from its insureds to pay for those services. Compl. ¶ 13. Paragon contends that they are not challenging Defendant's benefits determination or the scope of any plan's coverage. Compl. ¶ 13. Plaintiffs argue that they are entitled to collect for the professional anesthesia services they provided based on the parties' agreements, their course of dealing, and Defendant's past payments for such services. Compl. ¶ 12.

Defendant contends that its agreement with PAA was such that PAA was allowed to direct bill the anesthesiology services provided to surgeons and patients in "non-facility settings," that is, the offices of the surgeons. Answer ¶¶ 96, 98. Physicians were also allowed to direct bill their services and the use of their office "non-facility settings" under their own

[2] Pursuant to this court's order of August 3, 2011, PAA's claims for breach of contract, fraud, theft of services, unjust enrichment, quantum meruit, and estoppel were dismissed with prejudice from this action to be resolved via arbitration. PAA's only remaining claims are tortious interference with existing contracts and prospective business relationships, and defamation and business disparagement.

agreements, if any, with BCBSTX. Answer ¶ 97. Defendant asserts that PAA provided in-network services in "non-facility settings" for surgeons and patients and billed BCBSTX directly for them, and PAHR provided those services out-of-network[3] and billed BCBSTX directly for them. Answer ¶ 99. Defendant contends that POS, PAPS, and OSS provided similar services as PAA and PAHR.

Defendant contends that at all times relevant to this lawsuit it maintained a requirement, set forth in a manual or policy titled "Surgical Procedures Performed in the Physician's and Other Professional Provider's Office" ("Provider Manual"), that a provider not bill for the services, supplies, and equipment, which are considered the "technical component" rather that the "professional component" of an anesthesiologist's work. Answer ¶ 100. Defendant states that as an in-network provider, PAA was permitted to bill BCBSTX directly for the professional component of the anesthesiologist's services, that is, the anesthesiologist's time; however, all other "services, supplies, and equipment" (the technical component) could not be billed directly to BCBSTX. Answer ¶ 103. BCBSTX maintains that Plaintiffs were required to follow this Provider Manual requirement in submitting their bills, and Plaintiffs ignored and violated this requirement by independently billing BCBSTX for items such as nursing and preparation assistance, supplies, and equipment. Answer ¶ 105. As a result, BCBSTX asserts that it inadvertently paid Plaintiffs for services and "non-facility setting" costs to which they were not entitled due to Plaintiffs' inclusion of billing codes for physician services, technical services, and "non-facility setting" costs in their direct billing.

The crux of Plaintiffs' claims is that they were denied payment for anesthesia services and equipment provided to BCBSTX's insureds. Conversely, Defendant alleges that Plaintiffs

[3] An out-of-network provider is a provider of health care services that does not have a managed care agreement with BCBSTX or another Blue Cross and/or Blue Shield plan. Group Managed Care Agreement (Doc. 8-1) 2-3.

were overpaid for anesthesia services due to the improper manner in which they submitted claims to BCBSTX. Plaintiffs move pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) to dismiss BCBSTX's claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1001 et seq.*, and its declaratory judgment claim.

## II. Legal Standards

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as

undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

**B. Rule 12(b)(6) – Failure to State a Claim**

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*;

*Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id*. (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**C. Rule 12(b)(7) – Failure to Join a Party**

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows for dismissal for "failure to join a party under Rule 19." Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes and citations omitted).

**III. Analysis**

**A. Defendant's ERISA Counterclaims**

Plaintiffs move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss BCBSTX's ERISA counterclaims because they contend that BCBSTX is not a proper ERISA Plaintiff and this case does not implicate ERISA. As an initial matter, the court notes that it has diversity jurisdiction over this case. Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas*

*Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). Defendant removed this case to federal court because it demonstrated that complete diversity exists between the parties and that the amount in controversy exceeds $75,000. Plaintiffs' Complaint and Defendant's Answer demonstrate that that each Plaintiff is a citizen of Texas. Defendant's evidence in support of its Notice of Removal demonstrates that it is citizen of Illinois. Thus, no plaintiff shares the same citizenship as Defendant. Further, Plaintiffs assert in their Complaint that they "do not dispute that jurisdiction is proper pursuant to 28 U.S.C. § 1332." Complaint ¶ 1.

**1. 12(b)(1) – Whether BCBSTX is a Proper ERISA Plaintiff**

Paragon asserts that BCBSTX's ERISA claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because BCBSTX lacks standing to bring such claims. ERISA section 502(a)(1)(B) establishes that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" *Lone Star*, *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting 29 U.S.C. § 1132(a)(1)(B)). Standing to sue under ERISA section 502(a) "is limited to participants, beneficiaries, the Secretary, or fiduciaries." *Tango Transp. v. Healthcare Fin. Servs. LLC,* 322 F.3d 888, 891 (5th Cir. 2003) (citing 29 U.S.C. § 1132(a)). "Nevertheless, [the Fifth Circuit], like many of [its] sister Circuits, recognizes derivative standing [that] permits suits in the context of ERISA-governed employee welfare benefit plans[] to be brought by certain non-enumerated parties." *Id.* (citations omitted). "[A]n assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA." *Id.* at 892. Paragon argues that BCBSTX has not pled that it is a proper ERISA plaintiff, namely, that it is a fiduciary or

beneficiary. Paragon asserts that BCBSTX has only pled that it is an "insurer" or "administrator," and neither has standing to pursue an enforcement action under Section 502(a). BCBSTX counters that its pleadings show that it is seeking all relief accorded to it under ERISA, which would include its position as a fiduciary and argues that an insurer can be a fiduciary under ERISA.

A "fiduciary" is defined under ERISA as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 USC § 1105(c)(1)(B)].

29 U.S.C. § 1002(21)(A). ERISA further provides that an "individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization" may be a "person" under the definition of fiduciary. 29 U.S.C. § 1002(9). A determination about whether a claimant is entitled to benefits under the terms of the plan documents is a fiduciary act connected to plan administration. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Fiduciary status, however, does not simply attach to any administrative activity, but rather, only to the person (or entity) who has final authority to authorize or disallow a claim for benefits under the plan. *Varity*, 516 U.S. at 512 (citing Dep't of Labor Interpretative Bulletin § 75-8, 29 C.F.R. § 2509.75-8 (1995)) (emphasis added). A party may qualify as an ERISA fiduciary with regard to some claims but not others. *Bank of Louisiana v. Aetna US Healthcare, Inc.*, 468 F.3d 237, 243 (5th Cir. 2006) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)). As aptly stated by the Third Circuit, "Fiduciary duties under ERISA attach not just to

particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990) (also explaining, "when employers themselves serve as plan administrators, they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." (internal quotation marks and citations omitted)); *see also Davila*, 542 U.S. at 220 ("[T]he ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim.")

In *Bank of Louisiana v. Aetna*, the bank entered into two contracts with Aetna: (1) to administer the bank's self-insured employee benefit plan, and (2) to issue a stop-loss insurance policy for the plan. *Bank of Louisiana v. Aetna*, 468 F.3d at 239. Aetna refused to reimburse the bank for claims occurring during a three-month stop-loss extension period. *Id.* at 240. The bank filed a complaint alleging that Aetna had negligently or fraudulently misrepresented that, pursuant to the stop-loss extension, it would reimburse the bank for claims occurring during that period. *Id.* The bank also alleged that Aetna breached the stop-loss extension by administering the plan in such a fashion as to delay the processing of claims in order to remove them from coverage under the stop-loss extension. *Id.* at 244. Aetna moved for summary judgment on the ground that the bank's claims were preempted by ERISA, arguing that the claims directly affected the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Id.* at 240. Aetna argued that it was an ERISA fiduciary because the bank delegated to it the discretionary responsibility to administer the plan. *Id.* at 243. The court determined that Aetna was not acting in a fiduciary capacity when it negotiated the stop-loss extension, represented to the bank which claims would be covered by the

stop-loss extension, and performed its duties under the stop-loss extension. *Bank of Louisiana v. Aetna*, 468 F.3d at 243-44. The court held that the only claim to implicate Aetna's fiduciary relationship with the bank was the bank's claim that Aetna breached the stop-loss extension by failing to reimburse the bank for claims that Aetna delayed processing and paying (administering the plan) and, hence, that were not paid during the extension period. *Id.* at 244.

In the case at bar, BCBSTX does not assert in its Answer that it is a fiduciary. Defendant is seeking reimbursement of monies that it asserts it is owed because of Plaintiffs' alleged failure to comply with its billing requirements set forth in its Provider Manual. As previously mentioned, "[a] party acts in a fiduciary capacity when he: 1) exercises discretionary control over plan assets; 2) he renders investment advice for a fee to the plan; or 3) he has discretionary responsibility with regard to plan administration." *Bank of La. v. Aetna*, 468 F.3d at 244 n. 11 (citing 29 U.S.C. § 1002(21)(A)). Defendant has not alleged, with respect to its ERISA counterclaims, that it was exercising discretionary control over plan assets or discretionary responsibility with regard to plan administration or even that it was vested with authority to take such action.

Moreover, even if BCBSTX had discretionary control over plan assets and discretionary responsibility to administer the plan(s), the factual allegations in Defendant's Answer and the purpose of its claims demonstrate that BCBSTX was not acting in a fiduciary capacity with respect to the claims at issue in this case. In *Bank of Louisiana v. Aetna*, the court determined that Aetna was not acting in a fiduciary capacity when it negotiated the stop-loss extension, represented to the Bank which claims would be covered by the stop-loss extension, and performed its duties under the stop-loss extension. Similarly, BCBSTX was not acting in a fiduciary capacity when it established the billing requirements set forth in its Provider Manual,

determined that Paragon breached the requirements, and demanded reimbursement for the alleged breach. BCBSTX's claims do not require inquiry into its processing of benefit claims or administration of the plans at issue. BCBSTX's allegations are not those of an ERISA fiduciary seeking relief in its decision-making role for ERISA plans; they are those of an insurer seeking to recover monies based on its relationship with a health care provider—Paragon. The court determines that the factual allegations in Defendant's Answer and the purpose of its claims do not establish that it is a fiduciary. Accordingly, BCBSTX is not a proper ERISA plaintiff and does not have standing to assert its ERISA counterclaims. Therefore, the court will dismiss BCBSTX's ERISA counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1).

**2. 12(b)(6) – Whether This Case Implicates ERISA**

Even assuming that Defendant had standing to bring its ERISA claims and is a proper ERISA plaintiff, in light of the injury and basis of the claims asserted by Defendant, there is no set of facts that it could allege to state a claim to relief under ERISA. Paragon asserts that their claims do not implicate ERISA because this is a case involving the "rate" of payment, not the "right" to payment. Further, Paragon contends that they do not seek to recover monies as an assignee of an insured and do not seek to interpret an ERISA plan; rather, Paragon contends that this case presents only the question of fully reimbursing Paragon for the services provided. Mot. to Dismiss 5. Paragon argues that BCBSTX acknowledges in its Answer that its counterclaims do not arise out of an ERISA plan; rather, the parties' relationship governs, particularly as defined by BCBSTX's Provider Manual. *Id.* Defendant counters that at least some of the claims involved in this case pertain to plans governed by ERISA. Defendant also contends that this case does involve the "right" to receive payment because Paragon was not entitled to receive any payments from BCBSTX due to violations of its billing requirement.

Counterclaims may state independent and affirmative claims for relief, and are not limited, as were common law concepts of recoupment or setoff, to seeking relief that diminishes or defeats the opposing claim. Fed. R. Civ. P. 13(c); 3-13 *Moore's Federal Practice* § 13.40 (2012). Counterclaims are not limited to seeking the same type of relief as that sought in the pleading of the opposing party. *Id.* Accordingly, the court's analysis of Defendant's counterclaims is not limited to the scope of Plaintiffs' claims for relief.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court set forth a test to determine whether a party's causes of action fall "within the scope" of ERISA § 502(a)(1)(B) or are preempted by ERISA. The court believes the same analysis is applicable to determine whether a party's asserted injury or claims implicate ERISA. Thus, in determining whether a case involves an ERISA claim (or is preempted by ERISA), courts examine whether: (1) the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

The Fifth Circuit applied the *Davila* test in *Lone Star*, 579 F.3d 525. Lone Star OB/GYN Associates ("Lone Star") brought an action in Texas state court under Texas law alleging that health insurance provider Aetna Health Inc. ("Aetna") failed to pay the proper amount for services provided to patients treated by Lone Star. Aetna removed the case to federal court, arguing that Lone Star's state law claims were completely preempted by ERISA. Lone Star had entered into a Provider Agreement with Aetna, by which Lone Star became a "Participating Provider" for individuals enrolled in Aetna-administered insurance plans. *Lone Star*, 579 F.3d at 528. Lone Star alleged that Aetna had not paid its claims at the rate set out in the Provider Agreement and within the time period required under Texas law. *Id.* Lone Star excised all

claims for which Aetna purportedly submitted no payment because coverage was denied. *Id.* The court stated that the ERISA preemption question "turn[ed] on whether the Provider Agreement create[d] a legal duty 'independent' of the ERISA plan . . . ." *Id.* at 530. The court recognized that the Provider Agreement and ERISA plans cross-referenced each other, but that the determination of the rate that Aetna owed Lone Star under the Provider Agreement did not require any kind of benefit determination under the ERISA plan. *Id.* The court determined that "mere consultation of an ERISA plan is not enough to bring the claims within the scope of § 502(a)." *Lone Star*, 579 F.3d at 530. The court differentiated between a claim that implicates the *rate* of payment as set out in the Provider Agreement, and one that involves the *right* to payment under the terms of the benefit plan, and determined that the former "does not run afoul of *Davila* and is not preempted by ERISA." *Id.* The court held that while "any determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—does fall within ERISA, Lone Star's claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and [under Texas law]." *Id* at 531. The court further explained:

> *Davila* was thus concerned with the situation where potential liability derives entirely from the particular rights and obligations established by the benefit plans, i.e., coverage and benefit determinations. Where, however, a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment, coverage and benefit determinations are not implicated and the claims are not preempted.

*Id.* at 532. (alterations and citation omitted).

In a recent opinion, *Paragon Office Servs., LLC v. Aetna, Inc.*, 2012 WL 2423103 (N.D. Tex. June 27, 2012), this court held that certain health care providers' claims were preempted by ERISA where the plaintiffs (health care providers) brought claims for breach of implied of contract against the defendants (insurers administering ERISA plans and with whom plaintiffs

had no express contract) for failure to pay for equipment services associated with the provision of anesthesia to the defendants' insureds. In examining whether the claim for breach of implied contract implicated an independent legal duty, the parties referred to the distinction drawn in *Lone Star* between the *right* to payment and the *rate* of payment. After considering the defendants' evidence that the equipment services claims were denied and not covered under the plans because the services were not rendered in a recognized facility or surgery center, the court determined that Plaintiffs' breach of implied contract claim involved the *right to* payment and that such claim was completely preempted under ERISA section 502.

In the case *sub judice*, Defendant's ERISA claims allege:

> [Plaintiffs] submitted claims to BCBSTX in such a way that [they] obtained payment for services that exceeded the amount of payments that [they] should have received according to a proper benefits determination under plans governed by ERISA and FEHBA [("Federal Employees Health Benefit Plan" and applicable regulations)]. [Plaintiffs] received benefits by way of overpayments based upon [their] wrongdoing. As a result, [Plaintiffs] [were] not entitled—legally or equitably—to the benefits that [they] received under health plans governed by ERISA and/or FEHBA. BCBSTX thus sues for a determination of proper benefits and for recovery of those benefits under ERISA and/or FEHBA. This claim is intended to include all relief provided by ERISA and FEHBA. Indeed, the OPM-BCBSA master contract provides for reimbursement in this situation.

Answer ¶¶ 135, 150, 171, 192. Defendant incorporates the allegations in paragraphs 95-114 into each of its ERISA claims. Answer ¶¶ 134, 149, 170, 191. The allegations in those paragraphs relate to Plaintiffs' alleged failure to follow Defendant's Provider Manual requirement, mandating that the "technical component" of anesthesia services be billed through the surgical provider rather than directly to BCBSTX. Answer ¶ 104. Defendant states:

> At the heart of all claims is the interpretation and impact of the Provider Manual requirement on Plaintiffs' billing to BCBSTX. Plaintiffs interpret the Provider Manual in such a way to claim that it is inapplicable and, thus, they claim that they were underpaid and entitled to full reimbursement.

> BCBSTX asserts that the Provider Manual requirement prohibited Dr. Fisher and Plaintiffs from submitting certain types of bills to BCBSTX outside of the Provider Manual requirement; thus, Plaintiffs were actually over-paid, and not only are Plaintiffs not entitled to further reimbursement, but they owe a refund to BCBSTX of all-overpayments.

Answer ¶¶ 112-13.

The allegations alleged by Defendant with respect to its ERISA counterclaims demonstrate that BCBSTX is not bringing claims pursuant to any ERISA plan; rather, BCBSTX asserts that Paragon was overpaid as a result of their failure to follow BCBSTX's policies and procedures, including those set forth in its Provider Manual. Although ERISA plans may arguably be involved in this action, the determination of whether Paragon was overpaid or underpaid does not require any kind of benefit determination under the ERISA plans. As in *Lone Star*, BCBSTX's claims are entirely separate from coverage and arise out of the independent legal duty contained in BCBSTX's policies and procedures regarding billing. Accordingly, the court determines that, in light of the injury and basis of the claims asserted by Defendant, there is no set of facts that it could allege to state a claim to relief under ERISA. Therefore, the court will dismiss BCBSTX's ERISA counterclaims for the additional reason that it has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant requests an opportunity to amend its Answer should any of its claims be considered for dismissal. At the time of the filing of its response, Defendant asserted that Plaintiffs consistently failed to identify each health insurance claim upon which they seek to recover underpayments such that it may demonstrate that at least some of those claims pertain to plans governed by ERISA. Even assuming that ERISA plans are involved, mere involvement is insufficient to implicate ERISA, *Lone Star*, 579 F.3d at 530, as Defendant takes issue with Plaintiffs' alleged failure to follow protocols set forth in its Provider Manual and not any rights

and obligations established by the benefit plans, namely, coverage and benefit determinations. Amendment is inappropriate in this case because the court has determined that BCBSTX is not a proper ERISA plaintiff and, in light of the injury and basis of the claims asserted by BCBSTX, there is no set of facts that it could allege to state a claim to relief under ERISA. Thus, allowing Defendant leave to amend its Answer would be futile and would unnecessarily delay resolution of this action.

**B. Defendant's Declaratory Judgment Claim**

Plaintiffs move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) to dismiss BCBSTX's declaratory judgment claim because they contend that certain necessary parties have not been joined. Defendant's declaratory judgment claim requests that the court declare that:

> Dr. Fisher and/or Plaintiffs have submitted health insurance claims to BCBSTX that have not been paid, that such claims have not been paid on the basis that they have been submitted using false or improper coding that makes them unsuitable for payment, and that BCBSTX is not required to make payments on those claims to Dr. Fisher and/or Plaintiffs.

Answer ¶ 198. Defendant's Answer also alleges as an affirmative defense that "Plaintiffs have failed to join an indispensable party; thus, Plaintiffs' claims must be dismissed under Rule 12(b)(7)." Answer ¶ 61. Plaintiffs assert that the Blue Cross organization has a complex corporate hierarchy consisting of entities called "host plans" and "home plans," and that if BCBSTX takes the position that certain "home plans" are indispensable to this action, then leaving them out would be prejudicial in the adjudication of Defendant's declaratory judgment claim. By way of example, Plaintiffs explain that if a Paragon patient lived in Dallas and was insured though a Michigan-based employer, her "host plan" would be BCBSTX, but BCBS Michigan ("BCBSM") would be her "home plan." Mot. to Dismiss 4. BCBSTX would verify

coverage and interface with Paragon and other health care providers. *Id.* Paragon would bill BCBSTX and be paid by BCBSTX. *Id.* BCBSTX would seek reimbursement from BCBSM via BCBSA. *Id.* Paragon contends that this is a "shell game" and that Defendant should either: (1) admit that it is the sole party responsible for these claims, or (2) join the other purported responsible entities or "home plans." *Id.* Otherwise, Paragon contends, BCBSTX's claim for declaratory judgment should be dismissed. *Id.*

BCBSTX counters that no parties are missing from *its* declaratory judgment claim against Paragon. Response 12. Defendant asserts that *it* is fully permitted to seek a declaration that *it* is not required to pay Paragon and that Paragon is required to reimburse *it.* BCBSTX asserts that no other parties are necessary for its declaratory judgment action because it is not seeking relief of other parties that must be joined. BCBSTX asserts that it does not need to join the "home plans" to get the relief it seeks.

"Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). "First the district court must determine whether the party should be added under the requirements of Rule 19(a)." *Id.* Federal Rule of Civil Procedure 19 (a)(1) requires that a person "*subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction*" be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after 'an initial appraisal of the facts

indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood ex rel Mississippi*, 570 F.3d at 628. "If the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party." *Id.* at 629.

Paragon has not met their initial burden of demonstrating that certain "home plans" are necessary to resolve BCBSTX's declaratory judgment claim. As an initial matter, Plaintiffs have not identified what entity or home plan it contends is a necessary party so as to determine whether its joiner will deprive the court of subject-matter jurisdiction. *See* Fed. R. Civ. P. 19(a)(1). Moreover, Paragon has also not sufficiently demonstrated that in the entity's absence, the court cannot accord complete relief among existing parties.[4] With respect to *Defendant's* claim for declaratory relief, the court is not convinced that any other entity or "home plan" must be joined for the relief *it* seeks. On the other hand, it is likely that certain "home plans" are necessary to *Plaintiffs'* claims for relief as Plaintiffs allege that they were denied payment for certain claims, and such entities are likely responsible for the denial of payment. It is incumbent upon *Plaintiffs* to join the parties necessary for them to obtain complete relief.

Defendant asserts that Plaintiffs have "refus[ed] to identify any of [their] health insurance claims [upon which they seek to recover underpayments] so that BCBSTX can advise Paragon which 'home plans' are going to be subject to Paragon's claims." Response 13. This finger-pointing has resulting in a legal merry-go-round, which needs to cease. Accordingly, the court **orders** Plaintiffs to disclose in writing to Defendant which health insurance claims they contend are subject to this lawsuit **on or before July 27, 2012**. In turn, the court **orders** Defendant to

[4] Neither party has alleged that any nonparty claims an interest relating to the subject of the action. *See* Fed. R. Civ. P. 19(a)(1)(B).

disclose in writing to Plaintiffs which entities are subject to their claims **on or before August 3, 2012.** The court **orders** Plaintiffs to join all parties necessary to a fair resolution of *their* claims **on or before August 10, 2012.** As the court determines that Plaintiffs have not met their burden under Rule 19(a) of demonstrating that a missing party is necessary with respect to Defendant's declaratory judgment claim, the court will deny Plaintiffs' request to dismiss Defendant's declaratory judgment claim.

## IV. Conclusion

For the reasons herein stated, the court **grants in part and denies in part** Plaintiffs[']/Counter Defendants' Motion for Partial Dismissal of Counterclaims. Specifically, the court **grants** Plaintiffs' motion to dismiss Defendant's ERISA counterclaims. Each of Defendant's ERISA counterclaims, asserted in its Answer at paragraphs 134-37, 149-52, 170-73, and 191-94, is hereby **dismissed**. The court **denies** Plaintiffs' motion to dismiss Defendants' declaratory judgment claims.

**It is so ordered** this 17th day of July, 2012.

Sam A. Lindsay
United States District Judge