IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NEIL L. FISHER, M.D., d/b/a PARAGON** | § | |
| **ANESTHESIA ASSOCIATES, P.A.**, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-2652-L** |
| | § | |
| **BLUE CROSS AND BLUE SHIELD OF** | § | |
| **TEXAS, INC., a Division of Health** | § | |
| **Care Service Corporation, a Mutual** | § | |
| **Legal Reserve Company**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Plaintiffs'/Counter-Defendants' and Third Party Defendant's Motion for Partial Summary Judgment, filed December 1, 2014 (Doc. 250); Defendant's Motion for Summary Judgment, filed December 1, 2014 (Doc. 253); and Defendant's Motion to Strike Untimely Expert Declaration Submitted in Response to Defendant's Motion for Summary Judgment, filed June 26, 2015 (Doc. 286).  Having considered the motions, responses, replies, evidence, record, and applicable law, the court **grants in part** and **denies in part** Plaintiffs'/Counter-Defendants' and Third Party Defendant's Motion for Partial Summary Judgment; **grants in part** and **denies in part** Defendant's Motion for Summary Judgment; and **denies as moot** Defendant's Motion to Strike Untimely Expert Declaration Submitted in Response to Defendant's Motion for Summary Judgment.

### I.    Factual Background and Procedural History

This case arises out of a dispute between Plaintiffs, who are an anesthesiologist and several medical service provider companies, and Defendant, an insurance company, over claims for

**Memorandum Opinion and Order – Page 1**

reimbursement of anesthesia equipment, supplies, and services provided to the Defendant's insureds.  The court now sets forth the summary judgment evidence, viewed in the light most favorable to the nonmoving party, and draws all reasonable inferences in the nonmoving party's favor.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).[1]

Neil L. Fisher, M.D. (Dr. Fisher), an anesthesiologist doing business as Paragon Anesthesia Associates, P.A. ("PAA"), is the owner of: Paragon Office Services, LLC ("POS"); Paragon Ambulatory Health Resources, LLC ("PAHR"); Paragon Ambulatory Physician Services, LLC ("PAPS"); and Office Surgery Support Services, LLC ("OSS") (collectively, "Plaintiffs" or the "Paragon Entities").  Defendant is Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("Defendant" or "BCBSTX").  Plaintiffs provide anesthesia equipment, supplies, and services to obstetricians and gynecologists who perform in-office surgeries.  Dr. Fisher developed and assembled the technology for these services over many years.  Dr. Fisher established the Paragon Entities to provide the professional and technical services and bill for the services rendered.

Recognizing that the patient's insurance company generally is billed for the anesthesiologist's professional services as well as the gynecologist's professional services, Dr. Fisher struggled with how to bill insurance companies for his novel service of providing the anesthesia equipment needed to perform in-office surgical procedures.  Dr. Fisher also knew that when the same services he provided were performed in a hospital setting, the hospital would be

---

[1] The court has addressed this lawsuit extensively in prior opinions and, accordingly, assumes the parties' familiarity with the relevant facts and procedural history.  *See* July 17, 2012, Memorandum Opinion and Order (Doc.  94); August 3, 2011, Memorandum Opinion and Order (Doc. 28).  The court incorporates by reference these prior opinions as if herein fully set forth.

the entity billing for the equipment, as well as supplies and pharmaceuticals.  Dr. Fisher believed that Paragon would need to be reimbursed for anesthesia equipment and supplies separately, as the charges would not be covered by the anesthesiologist's professional services fee.  To that end, Dr. Fisher retained Vicki White, a billing expert, to manage claim submissions.  Dr. Fisher was the final decision maker regarding the Paragon Entities' billing.

Since 2007, the Paragon Entities used Current Procedural Technology ("CPT") codes created by the American Medical Association when submitting anesthesia equipment bills to BCBSTX.  Because there was no current existing CPT code for billing office-based anesthesia equipment, Dr. Fisher began using a code for the surgical procedure with a "-23" modifier, which denotes "unusual anesthesia."  PAA, which had a contract with BCBSTX, submitted claims when a patient's health insurance plan required her to receive treatment from a contracted, or "in-network" provider.  In instances where a patient had "out-of-network" benefits, one of the other Paragon Entities submitted the claim.  Neither POS nor PAHR ever submitted a claim to BCBSTX.

Between 2007 and 2010, although consistently approving and processing professional payments to the surgeon and anesthesiologist, BCBSTX paid the anesthesia equipment claims submitted by the Paragon Entities on an inconsistent basis.  When the Paragon Entities submitted claims to BCBSTX, they received a "Provider Claim Summary" outlining BCBSTX's decision regarding any particular claim, namely, whether to pay or deny the claim, in what amount, and for what reason.  The Paragon Entities received a variety of responses from BCBSTX, from payment in full, to partial payment, to complete denial of payment, with varying explanations including without limitation:

- The medical policy review department has determined that the service provided is not covered based on corporate medical policy criteria.

- Invalid place of treatment for type of procedure performed.

**Memorandum Opinion and Order – Page 3**

- This provider not eligible to bill for these services.

- This benefit category for this diagnosis not covered.

- Type of service provided is not covered for this diagnosis.

Pls.' Summ. J. App. 416-22 (Doc. 261-3).   The Paragon Entities sought to resolve these discrepancies with BCBSTX but never received clear instructions for submitting claims for anesthesia equipment services.   The Paragon Entities appealed many of the claim denials and continued to submit claims to BCBSTX, notwithstanding that some claims were rejected.

Beginning in 2009, after notification from an affiliate of possible double-billing by the Paragon Entities, the Blue Cross Special Investigations Department conducted an evaluation of services furnished by the Paragon Entities.   After opening a formal investigation of the Paragon Entities, BCBSTX notified the Texas Department of Insurance of the issues it was investigating. In April 2010, BCBSTX placed the Paragon Entities on 100% prepayment review status, which required them to submit claims in paper form with documentation, including a letter of explanation.   Beginning in or around July 2010, BCBSTX began to deny further payments and recoup amounts previously paid to the Paragon Entities.

At about this time, BCBSTX amended its policy manual to include a policy titled "Surgical Procedures Performed in the Physician's and Other Professional Provider's Office," which provided that:

> When performing surgical procedures in a non-facility setting, the physician's and other professional provider's reimbursement is all-inclusive.  Our payment covers all of the services, supplies, and equipment needed to perform the surgical procedure when a member receives these services in the physician's and other professional provider's office. Please note the physician and other professional provider reimbursement includes surgical equipment which may be owned or supplied by an outside surgical equipment or Durable Medical Equipment ("DME") vendor.  Claims from the surgical equipment or . . . DME vendor will be denied

**Memorandum Opinion and Order – Page 4**

based on the fact that the global physician and other professional provider reimbursement includes staff, supplies and equipment.

Pls.' Summ. J. App. 333 (Doc. 261-3).

On August 17, 2010, BCBSTX sent Plaintiffs a "cease and desist" letter, demanding that Plaintiffs stop submitting claims for reimbursement of anesthesia technical services, which included equipment and supplies.  In that letter, BCBSTX asserted for the first time that under its amended policy, the Paragon Entities could not file a separate claim for anesthesia technical equipment for in-office procedures.  BCBSTX took the position that under the amended policy, the cost of the technical component of general anesthesia is included in the payment to the surgeon.

The parties set up a meeting in or around November 2010 to resolve their differences. Without explanation, BCBSTX canceled the meeting the day before it was scheduled.  After reaching this impasse, Plaintiffs filed a civil action against BCBSTX on November 17, 2010, in the 298th Judicial District Court for Dallas County, Texas.  Defendant removed the state court action to this court on December 30, 2010, alleging that diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of costs and interest.[2]  *See* Notice of Removal §§ A, B (Doc. 1).  On February 13, 2012, Plaintiffs filed their Second Amended Complaint ("Complaint" or "Compl.") (Doc. 65), the live pleading in this case.  The Complaint

---

[2] On June 25, 2015, as part of its independent duty to determine the existence of federal subject matter jurisdiction, the court entered an order finding jurisdictional deficiencies in the pleadings and notice of removal, and directed BCBSTX to file a supplemental brief setting forth the citizenship of each party for purposes of establishing complete diversity.  *See* Order (Doc. 285).  On July 7, 2015, BCBSTX filed Defendant's Supplement Regarding Citizenship, as well as an appendix in support, clarifying and documenting the citizenship of each party.  *See* Doc. 290.  Having carefully considered the Supplement, as well as the documents contained in the appendix (*see* Def.'s App. 1-191), the court is satisfied that complete diversity of citizenship existed at the time of removal and exists currently, and that it, therefore, has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) to entertain this action.

**Memorandum Opinion and Order – Page 5**

alleges numerous Texas common law claims based on allegations that Defendant led Plaintiffs to believe that its anesthesia equipment services would be covered, that Defendant wrongfully denied coverage, that Defendant's failed to provide reimbursement, and that Defendant's method of calculating reimbursement resulted in substantial underpayment. Plaintiffs also allege Defendant made false representations to physicians and patients, defamed them, and tortiously interfered with their existing contracts and prospective business relationships.  On February 27, 2012, BCBSTX filed Defendant's Answer to Plaintiffs' Second Amended Complaint, Third Party Complaint, Counterclaims, and Request for Declaratory Judgment ("Answer") (Doc. 66).   Among other things, Defendant alleges that Plaintiffs were overpaid for anesthesia equipment services due to the improper manner in which they submitted claims to BCBSTX, and that Plaintiffs owe it a refund for the overpayments.

The parties have stipulated to dismissal with prejudice of all BCBSTX's counterclaims with the exception of money had and received, and its associated veil-piercing theories of liability. *See* December 14, 2012, Stipulation Dismissing Certain of Defendant's Counterclaims with Prejudice (Doc. 126).  The parties have also stipulated to dismissal with prejudice of Plaintiffs' theft of services claim as to all Plaintiffs, and to Plaintiffs' claims for breach of implied contract, quantum meruit, unjust enrichment, and recovery of attorney's fees as to PAHR and POS only.  In light of these stipulations, as well as the court's August 3, 2011 memorandum opinion and order accepting the findings and recommendation of the magistrate judge and granting in part and denying in part Defendant's motion to dismiss (*see* Doc. 28), the following claims remain: all Plaintiffs' claims for tortious interference, defamation and business disparagement, exemplary damages and interest; PAPS, POS, OSS, and PAHR's claims for fraud, estoppel and quasi-estoppel; and PAPS and OSS's claims for breach of implied contract, quantum meruit, unjust

enrichment, and for recovery of attorney's fees. *See* January 15, 2014, Stipulation Dismissing Certain of Plaintiffs' Claims with Prejudice (Doc. 208).[3]

On December 1, 2014, Plaintiffs filed a motion for partial summary judgment on BCBSTX's attempt to pierce the corporate veil between Dr. Fisher and the Paragon Entities, and its associated theories of liability, including that Dr. Fisher and the Paragon Entities are mere alter egos, or are a single business enterprise. *See* Plaintiffs'/Counter-Defendants' and Third Party Defendant's Motion for Partial Summary Judgment ("Pls.' Mot. Partial Summ. J.") (Doc. 250). Also on December 1, 2014, BCBSTX filed a motion for summary judgment on all of Plaintiffs' remaining claims. *See* Defendant's Motion for Summary Judgment (Def.'s Mot. Summ. J.") (Doc. 253). In response to BCBSTX's motion, Plaintiffs filed a response that included a new report from their damages expert, Dr. Ronald Luke. *See* Pls.' Summ. J. Resp. App. 450-59 (Docs. 261-3 & 261-4) (1/8/2015 Declaration of Ronald T. Luke) ("Luke 2015 Declaration"). BCBSTX has filed a motion to strike the Luke 2015 Declaration, arguing that the declaration was untimely. *See* Def.'s Motion to Strike Untimely Expert Declaration Submitted in Response to Defendant's Motion for Summary Judgment (Doc. 286). The motions have been fully briefed and are ripe for determination.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[3] Pursuant to this court's order of August 3, 2011 (*see* Doc. 28), PAA's claims for breach of contract, fraud, theft of services, unjust enrichment, quantum meruit, and estoppel were dismissed with prejudice from this action to be resolved via arbitration. PAA's only remaining claims are tortious interference with existing contracts and prospective business relationships, and defamation and business disparagement.

**Memorandum Opinion and Order – Page 7**

R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323-25; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

**Memorandum Opinion and Order – Page 8**

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

### A.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on BCBSTX's veil-piercing, alter-ego, and single-business-enterprise theories of liability.[4]  Plaintiffs do not challenge BCBSTX's counterclaim for money had and received.  In support, Plaintiffs argue that they are entitled to summary judgment on BCBSTX's veil-piercing theory of single business enterprise because the Texas Supreme Court rejected such a claim in *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008).  In *SSP Partners*, the Texas Supreme Court held that liability could not be

---

[4] BCBSTX alleges in its counterclaim that Dr. Fisher created and used limited liability companies and professional associations—including but not limited to PAA, POS, AHS, PAPS, and/or OSS—to perpetrate a fraudulent billing scheme by, among other things, submitting duplicate and improper claims for reimbursement.  BCBSTX further alleges that Dr. Fisher and Paragon are the alter egos of each other or constitute a single business enterprise.

**Memorandum Opinion and Order – Page 9**

imposed on a related company merely because it shared "names, offices, accounting, employees, services, and finances. There is nothing abusive or unjust about any of these practices in the abstract. Different entities may coordinate their activities without joint liability." 275 S.W.3d at 454. BCBSTX does not dispute that *SSP Partners* is controlling law. Accordingly, the court will grant judgment as a matter of law in favor of Plaintiffs on BCBSTX's single-business-enterprise theory of liability.

In addition, Plaintiffs argue that entry of summary judgment in their favor is required because BCBSTX has failed to raise a genuine dispute of material fact regarding actual fraud by Plaintiffs or fraud perpetrated for the direct personal benefit of Dr. Fisher or the other Paragon Entities, as required to pierce the corporate veil under Texas Business Organizations Code § 21.223(b). Pls.' Summ. J. Br. 20-23. Plaintiffs further argue that, even were the court to apply Texas common law, BCBSTX has failed to raise any dispute of material fact to establish its alter-ego theory of liability. *Id.* at 23-24.

In response, BCBSTX argues that the record evidence, viewed in the light most favorable to it, shows that Dr. Fisher created and used the Paragon Entities as a corporate fiction to perpetrate a fraudulent billing scheme, including directing "his billing agent to submit claims to BCBSTX on behalf of the Paragon company likely to receive the highest level of reimbursement for a given patient regardless of which Paragon company actually provided the services." Def.'s Resp. to Pls.' Mot. for Summ. J. 1 (Doc. 262). BCBSTX further contends that the record shows that Dr. Fisher created "additional entities in an attempt to circumvent the billing issues he faced with his existing Paragon companies[.]" *Id.* at 7.

The Fifth Circuit recently summarized Texas law on piercing the corporate veil of a corporation or limited liability company, as well as alter-ego principles, stating:

**Memorandum Opinion and Order – Page 10**

Due to the limited liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must "pierce the corporate veil."   Under Texas law, "an assertion of veil piercing or corporate disregard does not create a substantive cause of action [;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders of other business entities what is otherwise only a corporate liability.  Veil piercing and "alter-ego" principles apply equally to corporations and LLCs.

*Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (internal citations omitted).  Separate corporate structures may be ignored when "the corporate form has been used as part of a basically unfair device to achieve an inequitable result."  *Id.*  As Plaintiffs correctly argue, because Defendant's sole remaining claim for money had and received is quasi-contractual in nature, to meet its burden of showing alter-ego liability, BCBSTX must establish that Dr. Fisher "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."  Tex. Bus. Org. Code § 21.223(b).  This provision applies equally to limited liability companies, and the company's members, owners, and managers.  *Id.* § 101.002.

Viewing all evidence in the light most favorable to BCBSTX, the nonmoving party, the court determines that BCBSTX has produced competent summary judgment evidence sufficient to create a genuine dispute of material fact as to whether Dr. Fisher established the Paragon Entities as mere instrumentalities to facilitate a fraudulent billing scheme, and whether Dr. Fisher blurred the lines between him and the Paragon Entities such that these entities where nothing more than the alter ego of Dr. Fisher and one another.  Further, the court concludes that BCBSTX has produced summary judgment evidence sufficient to create a genuine dispute of material fact that the alleged fraud was perpetrated primarily for the direct personal benefit of Dr. Fisher or the other Paragon Entities.  *See* Tex. Bus. Org. Code § 21.223(b).  Because BCBSTX has raised a genuine dispute of material fact as to whether the court should pierce the corporate veil or apply alter-ego

**Memorandum Opinion and Order – Page 11**

principles, Plaintiffs' Motion for Partial Summary Judgment on these theories of liability will be denied.

### B.   BCBSTX's Motion for Summary Judgment

BCBSTX moves for summary judgment on Plaintiffs' claims of: (1) tortious interference with existing contracts and prospective business relationships; (2) defamation and business disparagement; (3) breach of implied contracts; (4) fraud; (5) unjust enrichment; (6) estoppel and quasi-estoppel; (7) on the quantum meruit claims for all underlying claims for benefits under ERISA-governed plans; (8) on all ERISA-governed "cost-avoided" damages claims; and (9) against PAHR and POS as to all claims.   Def.'s Br. in Supp. of Mot. for Summ. J. 2 ("Def.'s Summ. J. Br.") (Doc. 254).  The court will address the parties' arguments on each claim in turn.

### 1.   Tortious Interference

Defendant moves for summary judgment on Plaintiffs' tortious interference claims.  The elements of a claim for tortious interference with an existing contract are that: (1) a contract existed to which the plaintiff was a party; (2) the defendant willfully and intentionally interfered with the contract; and (3) the interference was a proximate cause of damage.  *See Prudential Ins. Co. of Am. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000).  The elements for tortious interference with prospective business relationships are as follows:

> (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Mary Kay v. Weber*, 601 F. Supp. 2d 839, 863 (N.D. Tex. 2009) (citation omitted); *see also Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

**Memorandum Opinion and Order – Page 12**

In support of the motion for summary judgment, Defendant argues as follows:

Plaintiffs have failed to establish a prima facie case for either tortious interference with existing contracts or prospective business relationships. Plaintiffs have produced no evidence that [they were a] party to a prior existing contract that has been breached or interfered with or that BCBSTX committed a willful act of interference that proximately damaged existing or prospective contracts.

Def.'s Summ. J. Br. 18. In response, Plaintiffs argue that there is "abundant evidence in the record that establishes evidence of and creates a fact issue with respect to every element of a tortious interference claim." Pls.' Summ. J. Resp. Br. 19.

With regard to Plaintiffs' claim for tortious interference with existing contracts, the court agrees with Defendant that Plaintiffs have failed to cite to any evidence of an actual, existing contract to which they were a party with which BCBCTX interfered. Accordingly, because Plaintiffs have failed to raise a genuine dispute of material fact that Defendant interfered with an existing contract, the court will grant Defendant's motion for summary judgment on this claim, and enter judgment as a matter of law in Defendant's favor. *See Lykos v. Welling*, 1997 WL 135669, at *7 (N.D. Tex. Mar. 12, 1997) (A cause of action for tortious interference with contract cannot succeed in the absence of a contract.); *Celotex*, 477 U.S. at 323.

With regard to Plaintiffs' claim for tortious interference with prospective business relationships, the court similarly determines that Plaintiffs have failed to produce summary judgment evidence sufficient to create a genuine dispute of material fact that they lost prospective business with doctors or patients as a result of an independently tortious act of BCBSTX. First, Dr. Fisher admitted during his deposition that he was not aware of any doctors that stopped using his services because of BCBSTX. *See* Pls.' Summ. J. Resp. App. 251-53. Moreover, BCBSTX has submitted uncontroverted affidavits from physicians that many of them continue to use Plaintiffs' services and that no BCBSTX representative made false representations to them about

**Memorandum Opinion and Order – Page 13**

Plaintiffs' alleged fraudulent billing methods.  *See* Def.'s Summ. J. App. 2, 4, 6, 8.[5]  Accordingly,

because Plaintiffs have failed to raise a genuine dispute of material fact that BCBSTX interfered

with their prospective business relationships, BCBSTX is entitled to judgment as a matter of law

in its favor.  *See Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 629 (S.D. Tex. 2011)

(granting summary judgment because no evidence that defendant's actions resulted in the alleged

harm).

### 2.      Defamation and Business Disparagement

Defendant seeks summary judgment on Plaintiffs' defamation and business disparagement

claims.  In support, Defendant argues that Plaintiffs have failed to produce any evidence that it

published a defamatory statement about them.

The elements of a defamation claim under Texas law are that: (1) the defendant published

a statement; (2) that was defamatory concerning plaintiff; (3) while acting with malice, if plaintiff

was a public figure, or negligence, if plaintiff was private, with regard to the truth of the statement.

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011)

(citations omitted).  A defamatory statement is one in which the words tend to damage a person's

reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury.  *Id.*

In their complaint, Plaintiffs alleged that BCBSTX, through employees Charlotte Neubauer

and Alma Willis, made defamatory statements to patients, physicians, and the Texas Medical

Board.  *See* Compl. ¶ 44.  In its motion, Defendant argues it is entitled to summary judgment

---

[5] To the extent Plaintiffs argue that Dr. Fisher's deposition testimony shows that he had to turn away potential franchisees (*see* Pls.' Summ. J. Resp. Br. 24), Plaintiffs only alleged "damages resulting from loss of contracts with physicians and patients[,]" and not franchisees.  *See* Compl. ¶¶ 39, 44. Accordingly, Dr. Fisher's deposition testimony regarding lost business relationships with franchisees is insufficient to create a genuine dispute of material fact on this cause of action.

because Plaintiff has produced no evidence supporting these allegations. As already noted, Defendant has submitted uncontroverted affidavits from physicians that no BCBSTX representative made false representations to them about Plaintiffs' alleged fraudulent billing methods. *See* Def.'s Summ. J. App. 2, 4, 6, 8. There is no evidence that Defendant made a complaint to the Texas Medical Board, and Dr. Fisher has testified that he has no evidence to support this claim. *Id.* at 82. Further, Plaintiffs have provided no evidence that Defendant made defamatory statements to patients.[6] To the extent Plaintiffs argue that notice to the Texas Department of Insurance ("TDI")is defamatory per se, the court rejects this argument. Because BCBSTX was investigating Plaintiffs, it had a legal obligation to notify the TDI. *See* Tex. Ins. Code § 701.051(a)(1)-(c).

To defeat summary judgment on its claim for business disparagement, Plaintiffs must establish, or raise a genuine dispute of material fact, that "(1) [BCBSTX] published false and disparaging information about [them], (2) with malice, (3) without privilege, (4) that resulted in special damages to [them]." *Forbes, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citation omitted). As to their business disparagement claim, Plaintiffs failed to respond to Defendant's summary judgment motion in their response brief and have not produced evidence to establish each of the elements to support this claim. Because Plaintiffs have failed to raise a genuine dispute of material fact that Defendant published a defamatory statement about them or disparaged their business, Defendant is entitled to judgment as a matter of law with respect to Plaintiffs' claims of defamation and business disparagement. *See Super Future Equities, Inc. v. Wells Fargo Bank MN, N.A.*, 553

---

[6] In its response brief, Plaintiffs make reference to a single patient they claim was informed by BCBSTX that Plaintiffs were being investigated for fraud. *See* Pls.' Summ. J. Resp. 25. There is no evidence this patient ever communicated with BCBSTX at all.

**Memorandum Opinion and Order – Page 15**

F. Supp. 2d 680, 687 (N.D. Tex. 2008) (granting summary judgment because no genuine issue of material fact existed as to whether movant published any information on counterclaimant).

### 3.      Breach of Implied Contract

Defendant seeks summary judgment with respect to Plaintiffs' claim that there was an implied-in-fact contract whereby Defendant agreed to pay for anesthesia equipment and supplies. In response, Plaintiffs argue that the record evidence is sufficient to raise a genuine dispute of material fact that BCBSTX had implied contracts with the Paragon Entities to pay for equipment and supplies needed as part and parcel of the anesthesia professional services.  Plaintiffs further argue that pursuant to the parties' meeting of the minds and course of dealing, they have the right to be paid for anesthesia equipment and supplies, and that BCBSTX has breached its implied contracts by failing and refusing to reimburse them.  Viewing the evidence in the light most favorable to Plaintiffs, the court agrees.

Under Texas law, "[t]he elements of a contract, express or implied, are identical." *Plotkin*, 304 S.W.3d at 476 (internal quotation marks omitted). "[T]he real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them." *Id.* at 476-77 (alteration in original) (internal quotation marks omitted).  "[T]he elements of either type of contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each parties' consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* at 476 (internal quotation marks omitted).  "Regardless of whether a contract is based on express or implied promises, mutual assent must be present.  In the case of an implied contract, however, mutual assent is inferred from the circumstances." *Mann Frankford Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009).  To state a claim for breach of an implied contract, a plaintiff must plead the existence of a valid implied contract,

performance or tendered performance by the plaintiff, breach of the implied contract by the defendants, and damages resulting from the breach. *Sports Supply Grp., Inc. v. Col. Gas Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

Viewing all evidence in the light most favorable to Plaintiffs, the nonmoving party, the court determines that Plaintiffs have produced competent summary judgment evidence sufficient to create a genuine dispute of material fact as to whether the parties had an implied contract for reimbursement of anesthesia equipment and supplies and that Defendant breached the contract. More specifically, the court finds on the record before it that a jury could reasonably infer that BCBSTX's approval of the surgeries, and payments to the anesthesiologist and gynecologist who performed the surgery, was behavior consistent with a common understanding that the equipment needed to deliver the anesthesia would similarly be covered. See Pls.' Summ. J. Resp. App. 276-77, 98, 389. Further, that BCBSTX inconsistently paid the Paragon Entities does not draw into question the existence of an agreement, but it does provide evidence from which a reasonable jury could conclude that BCBSTX breached the implied agreement. Finally, whether the parties had a meeting of the minds or common understanding is better suited for the trier of fact and cannot be determined by the court at this juncture. *See, e.g., In re Palms At Water's Edge, L.P.*, 334 B.R. 853, 857-58 (Bankr. W.D. Tex. 2005) (Simply alleging there was no meeting of the minds is not a legitimate basis for summary judgment because "[w]hen there is no written contract in evidence, and one party attests to a contractual agreement while the other vigorously denies a meeting of the minds, determining the existence of a contract is a question of fact."). In sum, because Plaintiffs have raised a genuine dispute of material fact as to whether the parties had an implied contract and whether Defendant breached the contract, Defendant's Motion for Summary Judgment on this claim will be denied.

**Memorandum Opinion and Order – Page 17**

4.      **Fraud**

BCBSTX moves for summary judgment on Plaintiffs' fraud claim.  In support, BCBSTX argues that: (1) Plaintiffs "have failed to establish that [it] made any misrepresentations to Plaintiffs regarding billing or paying Plaintiffs"; (2) Plaintiffs cannot establish that BCBSTX made any false representation to physicians and patients regarding its reimbursement of Plaintiffs' in-office anesthesia services; (3) "Plaintiff cannot demonstrate that they detrimentally relied on any representation made by BCBSTX[]"; and (4) "Plaintiffs' fraud claim premised on statements allegedly made to third parties fails" since Plaintiffs "cannot show that BCBSTX intended for Plaintiffs to rely" on any statements to third parties.  Def.'s Summ. J. Br. 29-30.

Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Based on the record before it, the court determines that Plaintiffs have failed to raise a genuine dispute of material fact that they relied to their detriment on any false statements by BCBSTX.   Uncontroverted evidence shows that Plaintiffs, during the relevant time period, continued to form new entities and attempted to bill for the equipment services via these newly formed entities.  Plaintiffs continued to submit bills for the equipment services and use a billing code with a modifier "-23" and believed the insurance plans covered the equipment, drugs, and supplies, and continued to submit claims for those charges.  Thus, even if Defendant made any false statements, Plaintiffs have failed to raise a genuine dispute of material fact that they relied on any such statements to their detriment, and, at all times, they believed the equipment and

**Memorandum Opinion and Order – Page 18**

supplies claims were covered and continued submitting claims and appealing denied claims.  *See*

*AMS Staff Leasing, NA Ltd. v. Assoc. Contract Truckmen, Inc.*, 2006 WL 1096777, at *3 (N.D.

Tex. Apr. 26, 2006) (granting summary judgment because the plaintiff could not "identify specific

facts from which a reasonable trier of fact could find that [it] relied on" any misrepresentation).[7]

Accordingly, because Plaintiffs have failed to raise a genuine dispute of material fact that

they detrimentally relied on any false statement made by BCBSTX, BCBSTX is entitled to

judgment as a matter of law on Plaintiffs' claim for fraud.

### 5.    Unjust Enrichment

Defendant argues it is entitled to summary judgment on Plaintiffs' unjust enrichment claim

because, among other things, unjust enrichment is not an independent cause of action.   In

opposition, Plaintiffs argue that this issue was already decided by the court when it accepted the

magistrate judge's finding that unjust enrichment exists as a independent cause of action, and

accepted her recommendation to deny Defendant's motion to dismiss this claim.

Having considered the development of the law following the magistrate judge's 2011

findings and recommendation in this case, the court agrees with Defendant that the vast majority

of courts, including this court, now hold that unjust enrichment is not a separate cause of action.

*See Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011)

(Lindsay, J.) (granting summary judgment and noting that "Texas courts of appeals have

consistently held that unjust enrichment is not an independent cause of action but instead a theory

---

[7] For the first time in response to BCBSTX's motion for summary judgment, Plaintiffs present a new fraud theory, namely, that BCBSTX misrepresented that its site of service differential included anesthesia equipment costs.  Pls.' Summ. J. Resp. Br. 35-36.  As this theory of fraud was never pled, it is not properly before the court, and the court will not consider it in ruling on BCBSTX's motion for summary judgment. Because the court will not consider this fraud argument, the 2015 Luke Declaration is immaterial, and the court will not consider it, thereby rendering moot Defendant's motion to strike the declaration.

upon which an action for restitution may rest") (internal citations omitted); *Summers v. Pennymae Corp.*, 2012 WL 5944943, at \*10 (N.D. Tex. Nov. 28, 2012) (Lindsay, J.) (granting motion to dismiss because "request for unjust enrichment is equitable in nature and does not constitute an independent cause of action"); *see also Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2013 WL 5903300, at \*9 (N.D. Tex. Nov. 4, 2013) (O'Connor, J.) ("Unjust enrichment is not an independent cause of action under Texas law.").

In sum, consistent with its recent decisions and appellate courts in Texas, the court determines that unjust enrichment is not a separate cause of action. Accordingly, BCBSTX is entitled to judgment as a matter of law on Plaintiffs' unjust enrichment claim. Further, in light of this ruling, the court **vacates** that part of its Memorandum Opinion and Order of August 3, 2011, that accepted the Findings and Recommendation of the United States Magistrate Judge, filed June 27, 2011, relating to Plaintiffs' claim for unjust enrichment.

### 6.      Estoppel and Quasi-Estoppel Claims

Defendant seeks summary judgment on Plaintiffs' equitable estoppel claims because Plaintiffs have failed to produce evidence that Defendant made false representations or concealed material facts, that Plaintiffs relied to their detriment on any false representations, or that any benefit was conferred to Defendant. Having considered the parties' arguments, the summary judgment record, and applicable law, the court determines that Defendant is entitled to summary judgment on Plaintiffs' equitable estoppel claim, but not on Plaintiffs' quasi-estoppel claim. Like fraud, one elements of estoppel is detrimental reliance on a false representation or concealment of material facts. *See Furmanite Worldwide , Inc. v. NextCorp Ltd.*, 339 S.W.3d 326, 334 (Tex. App.—Dallas 2011). As stated previously, *see supra* Sec. III.B.4, Plaintiffs have failed to raise a genuine dispute of material fact that they detrimentally relied on any false representation.

**Memorandum Opinion and Order – Page 20**

Accordingly, Defendant's motion for summary judgment on Plaintiffs' estoppel claim will be granted.

A claim for quasi-estoppel, however, does not require a showing of a misrepresentation or detrimental reliance but only that it would be unconscionable to allow the defendant to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *See Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.*, 611 F.3d 289, 298 (5th Cir. 2010) (citation omitted).  The record before the court is sufficient to create a genuine dispute of material fact on Plaintiffs' quasi-estoppel claim.  Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' quasi-estoppel claim will be denied.

### 7.     Quantum Meruit

Defendant seeks summary judgment on Plaintiffs' quantum meruit claims, arguing that Plaintiffs have produced no evidence that Defendant received a benefit from Plaintiffs.  Plaintiffs argue that this issue was already decided by the court, when it accepted the magistrate judge's finding that while the immediate beneficiaries of Plaintiffs' medical services were the patients, Defendant received the benefit of having its obligations to its plan members discharged. *See Fisher v. Blue Cross Blue Shield of Texas*, 2011 WL 3417097, at *3-4 (N.D. Tex. Aug. 3, 2011) (Lindsay, J.).  The court agrees that Defendant may not relitigate this issue.  Nevertheless, the court is now confronted with a motion for summary judgment, requiring evidence that any services and benefits were conferred directly on BCBSTX.  Even viewing all evidence in the light most favorable to Plaintiffs, the court concludes that any possible benefit conferred on BCBSTX was too attenuated and indirect to support Plaintiffs' quantum meruit claim  *See Encompass Office Solutions*, 775 F. Supp. 2d at 966 ("Even if United received some benefit as a result of Encompass providing medical services to its insureds, a proposition the court finds dubious, Encompass's services were rendered

to and for its patients, not United."); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 792-93 (Tex. App. 2004) (holding that plaintiffs must render services to defendant and that incidental benefits are insufficient to establish quantum meruit claim).  In light of this holding, the court **vacates** that part of its Memorandum Opinion and Order of August 3, 2011, that accepted the Findings and Conclusions of the United States Magistrate Judge, filed June 27, 2011, relating to Plaintiffs' claim for quantum meruit.

### 8.       ERISA-governed "cost-avoided" damages claims

BCBSTX argues that, as "to any individual healthcare claims for reimbursement that relate to patients covered under health plans governed by ERISA[,]" Plaintiffs' quasi-contractual claims are preempted by ERISA.  Def.'s Summ. J. Br. 38.  In response, Plaintiffs argue, among other things, that Defendant "has failed to point to any ERISA plan in its motion, let alone all of the plans that would govern the underlying reimbursement claims at issue.  Accordingly, denial of Defendant's motion is warranted on facial grounds alone."  Pls.' Summ. J. Resp. Br. 45 n.187.  The court agrees.  While Defendant's argument may rest on a correct application of the law, absent identification or proof of any ERISA plans at issue, any ruling by the court would amount to an advisory opinion, which the court is not in the business of providing.  Accordingly, the court will deny Defendant's Motion for Summary Judgment based on conflict preemption.

### 9.       Against PAHR and POS as to all claims

Defendant moves for dismissal of all claims asserted by Plaintiffs POS and PAHR "for the independent reason that POS and PAHR submitted no claims to BCBSTX and took no other actions to establish a right of payment for any services [they] may have rendered to BCBSTX members."  Def.'s Summ. J. Br. 39-40.  Plaintiffs concede that POS and PAHR did not bill BCBSTX for any claims.  Pls.' Resp. Br. 50 n.191.

**Memorandum Opinion and Order – Page 22**

In light of Plaintiffs' concession, and the lack of any evidence of any basis for a claim by POS and PAHR, the court determines that no genuine dispute of material fact exists regarding any claims made by POS and PAHR, and BCBSTX is entitled to judgment as a matter of law on all claims asserted by POS and PAHR.

### C. Defendant's Motion to Strike Untimely Expert Declaration Submitted in Response to Defendant's Motion for Summary Judgment

In response to BCBSTX's motion, Plaintiffs filed a response that included a new report from their damages expert, Dr. Ronald Luke. *See* Pls.' Summ. J. Resp. App. 450-59. On June 26, 2015, BCBSTX filed a motion to strike the Luke 2015 Declaration, arguing that the declaration was untimely. The court has no need to consider the Luke 2015 Declaration in making its rulings and, accordingly, Defendant's Motion to Strike will be denied as moot. *See supra* note 7.

## IV. Conclusion

For the reasons herein stated, the court **grants in part** and **denies in part** Plaintiffs'/Counter-Defendants' and Third Party Defendant's Motion for Partial Summary Judgment (Doc. 250); **grants in part** and **denies in part** Defendant's Motion for Summary Judgment (Doc. 253); and **denies as moot** Defendant's Motion to Strike Untimely Expert Declaration Submitted in Response to Defendant's Motion for Summary Judgment (Doc. 286). With respect to Plaintiffs'/Counter-Defendants' and Third Party Defendant's Motion for Partial Summary Judgment, the court **grants** the motion insofar as Defendant's single-business-enterprise theory of liability, and **denies** the motion in all other parts. With respect to Defendant's Motion for Summary Judgment, the court **grants** the motion as to the Paragon Entities' claims of tortious interference with existing contracts and prospective business relationships, defamation and business disparagement, fraud, estoppel, unjust enrichment, and quantum meruit, and **denies** the motion in all other respects. Accordingly, Plaintiffs' claims of tortious interference with existing

contracts and prospective business relationships, defamation and business disparagement, fraud, estoppel, unjust enrichment, and quantum meruit are hereby **dismissed with prejudice**.  Further, any remaining claims brought by Plaintiffs POS and PAHR's are also hereby **dismissed with prejudice** in their entirety.

Remaining for trial are: Plaintiffs PAPS's and OSS's claims for breach of implied contract and quasi-estoppel; and BCBSTX's counterclaim for money had and received and its related allegation that the corporate veil should be pierced between and among Dr. Fisher and the Paragon Entities or, alternatively, that Dr. Fisher and the Paragon Entities are alter egos of each other.

The court has written on this case extensively on several occasions.  The parties are fully aware of the issues that remain for trial.  Given the prolonged nature of this litigation and the extensive costs, the court **directs** the parties to confer to determine whether what remains of this action can be resolved without a trial.  The parties shall report to the court in writing by **October 9, 2015**, as to the status of the settlement negotiations.

**It is so ordered** this 23rd day of September, 2015.

Sam A. Lindsay
United States District Judge