Case 3:10-cv-02652-L   Document 424   Filed 02/01/17   Page 1 of 12   PageID 13584

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **NEAL L. FISHER, M.D., P.A., d/b/a Paragon Anesthesia Associates; Paragon Office Services LLC; Paragon Ambulatory Health Resources, LLC; Paragon Ambulatory Physicians Services, PA; and Office Surgery Support Services, LLC,**<br><br>        Plaintiffs and Counter Defendants,<br><br>v.<br><br>**BLUE CROSS BLUE SHIELD OF TEXAS, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company,**<br><br>        Defendant, Counter-Plaintiff, and Third Party Plaintiff,<br><br>v.<br><br>**Neal L. Fisher, MD,**<br><br>        Third-Party Defendant. | § § § § § § § § § § § § § § § § § § § § § § § §   Civil Action No. 3:10-CV-2652-L |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Alter or Amend Judgment to Include Prejudgment Interest (Doc. 408), filed November 9, 2016; Paragon Parties' Rule 50 Motion for Judgment As A Matter of Law, and in the Alternative, Rule 59 Motion for New Trial (Doc. 410), filed November 16, 2016; and Paragon Parties' Rule 59 Motion for New Trial (Doc. 412), filed November 16, 2016. Plaintiffs Neal L. Fisher, M.D., P.A., d/b/a Paragon Anesthesia Associates;

**Memorandum Opinion and Order – Page 1**

Paragon Office Services, LLC; Paragon Ambulatory Health Resources, LLC; Paragon Ambulatory Physicians Services, PA ("PAPS"); and Office Surgery Support Services, LLC ("OSSS"), (Plaintiffs and Counter-Defendants), and Neal L. Fisher, M.D. (Third Party Defendant) (collectively, "Paragon Parties" or "Plaintiffs") request judgment as a matter of law and that Blue Cross Blue Shield of Texas ("Defendant") take nothing or, alternatively, that the court grant a new trial on all claims. The court has considered all of the motions, briefs, responses, replies, and applicable law, and for the reasons stated herein, it determines that nothing in the motions would cause the court to enter judgment as a matter of law under Rule 50, set aside the jury verdict, or grant a new trial under Rule 59. Further, the court determines that Defendant is entitled to prejudgment interest.

**I. Paragon Parties' Rule 50 Motion for Judgment As A Matter of Law and, in the Alternative, Rule 59 Motion for New Trial**

**A. Standard of Review for Judgment as a Matter of Law**

Judgment as a matter of law is proper when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party." Fed. R. Civ. P. 50(a)(1). The court must review all of the evidence in the record and "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Judgment as a matter of law should be granted only "if the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Coffel v. Stryker Corp.*, 384 F.3d 625, 630 (5th Cir. 2002); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). Thus, a jury verdict must be upheld unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 296-97 (internal quotations omitted). A court must test the sufficiency of the evidence under the

standard enunciated in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (*en banc*), *overruled on unrelated grounds, Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336-38 (5th Cir. 1997) (*en banc*); *Casarez v. Burlington Northern Santa Fe Co.*, 193 F.3d 334, 336 (5th Cir. 1999). Under *Boeing*, "[t]here must be a conflict in substantial evidence to create a jury question." 411 F.2d at 375. Substantial evidence is "evidence of such quality and weight that reasonable and fairminded [persons] in the exercise of impartial judgment might reach different conclusions." *Id*. at 374; *see also Krystek v. University of Southern Miss.*, 164 F.3d 251, 255 (5th Cir. 1999).

### B. Discussion

The crux of Plaintiffs' motion is that there is insufficient evidence to support the jury's finding that Plaintiffs are alter egos of each other and that Defendant is entitled to money-had-and-received from Plaintiffs. Plaintiffs assert that there is no evidence Dr. Fisher, individually, had or received any money paid by Defendant. To support this argument, Plaintiffs state that the evidence presented at trial proved that Defendant only paid money to PAPS or OSSS, and there is no evidence that any of those funds ever reached Dr. Fisher or any of the other Paragon Parties. Accordingly, Plaintiffs contend there is insufficient evidence to support the jury's finding that Dr. Fisher had or received any money from Defendant. Further, with respect to the jury's money-had-and-received liability finding, Plaintiffs contend that the only liability finding in the jury's verdict was against Dr. Fisher, individually, not the other parties.

Defendant counters that there was sufficient evidence to support its money-had-and-received claim. In support of its contention, Defendant points to specific evidence in the record that shows that Defendant had a site-of-service policy, Plaintiffs were aware of this policy, and Defendant made erroneous and duplicative payments to Plaintiffs under the policy. Further, in

response to Plaintiffs' contentions related to the liability for the money-had-and-received claim, Defendant contends that the jury found each Plaintiff liable for money-had-and-received.

The court agrees with Defendant. There is ample evidence in the record to support a finding of money-had-and-received. Moreover, Plaintiffs contention that the only liability finding in the jury's verdict was against Dr. Fisher is untrue. Question No. 7 of the jury charge asked, "Did [Defendant] prove by a preponderance of the evidence that [Plaintiffs have] money in equity and good conscience that belongs to [Defendant]?", and the jury answered "Yes" next to each of the Plaintiffs' names, meaning that the jury necessarily found each Plaintiff liable for the money-had-and-received claim. While the jury only wrote the amount of money-had-and-received in the answer to Question No. 8 next to Dr. Fisher's name, it found each Plaintiff liable for money-had-and-received. Moreover, in Question No. 9, the jury found that Plaintiffs were alter egos of each other, so the money ascribed to one Plaintiff would also be owed by the other Plaintiffs.

With respect to the jury's alter ego finding, Plaintiffs contend that there is not enough evidence to support the liability finding, and that the court, therefore, must disregard it. Plaintiffs also contend that alter ego requires proving actual fraud and that there was no evidence of actual fraud. Plaintiffs further assert that Dr. Fisher was separate from his companies and that there is no evidence that an injustice would result in holding only certain entities liable. Moreover, Plaintiffs contend that there is no support for veil piercing among the Paragon entities.

In response to Plaintiffs' alter ego argument, Defendant contends that the jury correctly followed the court's charge and Texas law when determining that Plaintiffs were alter egos. Further, Defendant contends that there was sufficient evidence for the jury to determine that actual fraud existed. Specifically, Defendant points to the testimony of Plaintiffs' billing agent, Ms. Vicki White, as she testified that rather than bill through the Paragon Entity that provided the

**Memorandum Opinion and Order – Page 4**

service, Plaintiffs billed Defendant through the Paragon Party that would get the best reimbursement. Ms. White also testified that Plaintiffs submitted claims for services rendered by OSSS before it was registered to do business. Further, Defendant contends that the alter ego verdict is factually supported, and it cites to an abundant amount of evidence in the record to support the jury's finding, including Dr. Fisher's own testimony that he controlled all of the Paragon entities.

Again, the court agrees with Defendant, as there was sufficient evidence to support a finding that the Plaintiffs were alter egos of each other. The jury charge instructed the jury to find that Plaintiffs were alter egos if:

(1) the Paragon entities were organized and operated as a mere tool or business conduit of Neal Fisher;
(2) there was such unity between the Paragon entities and Fisher that the separateness of the Paragon entities had ceased and holding only certain Paragon entities responsible would result in injustice;
(3) and Fisher caused the Paragon entities to be used for the purpose of perpetrating and did perpetrate an actual fraud on BCBS primarily for the direct personal benefit of Fisher. "Actual fraud" means dishonesty of purpose or intent to deceive.

There was evidence presented in trial that could lead a reasonable juror to conclude that each of these elements had been established. With respect to elements one and two, Dr. Fisher was the sole owner of each of the Paragon entities, with the exception of one of the entities where his daughter owned a percentage. In addition to almost all of the entities having the same owner, the testimony presented at trial showed that at times they shared the same office, equipment, vans, and employees. Moreover, when Defendant's counsel asked Dr. Fisher, "Where does the buck stop? Is that you for all of the plaintiff entities in this case?", he answered "Yes . . . I take responsibility for everything in the company." Accordingly, the evidence presented during trial was sufficient for a reasonable juror to conclude that Plaintiffs were business conduits of Dr. Fisher and they

lacked separateness. With respect to the last elements, a reasonable juror could also conclude or infer that Dr. Fisher used the multiple entities to perpetrate actual fraud on Defendant through Plaintiffs' billing process. Specifically, Ms. White and Dr. Fisher both testified that Plaintiffs billed Defendant for services rendered by OSSS and PAPS before those entities existed. Ms. White also testified that Plaintiffs would submit claims to Defendant through entities that did not perform the service in an attempt to maximize reimbursement. In examining this evidence, a reasonable juror could conclude or infer that Plaintiffs were dishonest in how they submitted their claims for reimbursement and that this was done to deceive Defendant; therefore, a finding of actual fraud was reasonable and amply supported by the record.

Moreover, throughout Plaintiffs' motion, they make broad conclusory statements but fail to cite to any testimony from the trial transcript or exhibits in support of their contentions. The reasoning in Plaintiffs' motion suggests to the court that they have neither carefully reviewed the transcript nor correctly recalled the facts of the case. Upon review of the trial transcript and exhibits, a reasonable juror could find that there was legally sufficient evidence to support the jury's verdict in this case. Accordingly, Plaintiffs' motion will be **denied**.

## II. Paragon Parties' Rule 59 Motion for New Trial

### A. Standard of Review for Motion for New Trial

After a jury trial, a court may grant a new trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). A "trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of evidence." *Sierra v. Dorel Juvenile Grp.*, No. 15-41745, 2016 WL 5724788, at *1 (5th Cir. Oct. 3, 2016) (citing *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998)). In deciding whether a jury's verdict is contrary to the great weight

of evidence, the district court may exercise its discretion. *Id.* A district court may also grant a new trial if it finds that "the trial was unfair or marred by prejudicial error." *Grace v. Bd. of Tr. for State Coll. & Univ.*, 8 F.3d 23 (5th Cir. 1993) (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)).

    **B.**    **Discussion**

        **1.**    **Parties' Arguments**

Plaintiffs request that the court grant a new trial, because they contend that the trial was marred by several errors. First, Plaintiffs contend that the court erred when it excluded the opinion testimony of Denise Hall pursuant to Federal Rule of Evidence 702 ("Rule 702"), because Plaintiffs identified the bases for her opinions. Second, Plaintiffs' contend that the court erred by excluding evidence of industry standards, specifically how other insurance companies reimburse Plaintiffs, as that information was necessary to establish that the parties had an implied contract. Last, Plaintiffs assert that the court erred by excluding a jury instruction that industry standards are relevant in determining whether an implied contract exists.

Defendant contends that the court did not err by excluding the opinion testimony of Denise Hall, as Plaintiffs did not properly qualify her as an expert. With respect to Plaintiffs' industry standards-argument, Defendant contends that the court properly exercised its discretion and that Plaintiffs successfully fought to keep such information out during the discovery phase. When Defendant moved to compel discovery related to how Plaintiffs were reimbursed by other insurers, Plaintiffs objected to the relevance of Defendant conducting any discovery related to how it was paid by other insurers, and their objection was sustained. Defendant asserts that Plaintiffs are now judicially estopped from arguing that the court erred by excluding evidence of industry standards, as Plaintiffs have taken a completely inconsistent position. Last, Defendant argues that the court

**Memorandum Opinion and Order – Page 7**

did not err when it excluded an instruction on industry standards in the jury charge, as no such evidence was presented during trial, and a jury instruction regarding industry standards without any evidence would have been irrelevant, confusing, and misleading to the jury.

### 2. Exclusion of Denise Hall's ("Ms. Hall") Testimony

With respect to Plaintiffs' contention that the court erred by excluding the opinion testimony of Ms. Hall, the court emphasizes that the testimony was excluded primarily because Plaintiffs failed to lay the proper predicate as set forth by Rule 702 and applicable Fifth Circuit authority. Plaintiffs' counsel did not follow the procedure as required by Rule 702 to show that Ms. Hall's testimony met the requirements of Rule 702, as they failed to establish that: (c) the testimony was the product of reliable principles and methods; and (d) Ms. Hall reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702(c),(d). As such, since Plaintiffs failed to establish two crucial requirements for a Rule 702 witness, there was an inadequate basis for the court to determine that Ms. Hall's opinions were relevant and reliable insofar as assisting the jury in understanding the evidence relevant to this case.

The court gave Plaintiffs' attorney at least three opportunities to show that Ms. Hall met all of the strict requirements of Rule 702 to give her opinion testimony. Rather than embarrass counsel in front of the jury, in a bench conference, the court gave him instructions on how to properly qualify her as a Rule 702 witness. Rather than heed the court's instructions, counsel was hell-bent on conducting the examination the way he saw fit rather than in accordance with the authority provided by the court and Rule 702. The requirements of Rule 702 cannot be established in a conclusory and perfunctory manner. The court must be convinced that sufficient bases exist for allowing an opinion to be expressed by a Rule 702 witness.

Moreover, although it was not incumbent upon the court to educate counsel regarding legal strategy and how to examine a Rule 702 witness, before the court heard Rule 702 witness testimony from either party, it provided counsel for both parties with a cite to and a copy of *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194 (5th Cir. 2016), because it had a strong suspicion that the proper predicate would not be laid pursuant to Rule 702. Notwithstanding being forewarned by the court, counsel for both sides struggled in complying with Rule 702. The bottom line is that Defendant's counsel succeeded in meeting the requirements of Rule 702 on his third attempt, while Plaintiffs' counsel did not. In *Carlson*, the Fifth Circuit reiterates in strong terms the gatekeeping function of district courts and underscores the need for district courts to ensure there is ample evidence in the record to meet the requirements of Rule 702.

The court was extremely patient in giving Plaintiffs an opportunity to meet the requirements of Rule 702. After at least three failed attempts by Plaintiffs' counsel and several hours of testimony, the court ruled at a bench conference that Ms. Hall's testimony would not be allowed. Whether Ms. Hall was qualified as a Rule 702 witness was a close question; however, the court ultimately concluded that Plaintiffs failed to convince it that Ms. Hall's testimony satisfied the requirements of Rule 702, as she did not "connect the dots" with respect to Rule 702(c),(d) and her opinions.[*]

---

[*] The court ultimately admonished Plaintiffs' counsel at a bench conference for his unprofessional conduct. Even if the court erred, counsel is to be courteous and respectful to the court. Plaintiffs' counsel sat at the counsel table with his arms folded, pouting, and glaring at the court to show his displeasure with its ruling. The court ignored this and even remarked to Plaintiffs' counsel at some point in the trial that his conduct after hearing the court's ruling was unprofessional. The court could have disciplined or sanctioned counsel for his conduct, but it decided not to do so, hoping that Plaintiffs' counsel would take the court's admonishment seriously and use the experience as a teachable moment.

The court remained impervious to Plaintiffs' counsel's antics and made a ruling based upon its application and interpretation of the law, and will not spend further time discussing this issue. Plaintiffs have preserved this issue for appeal, and they are free to make their arguments to the United States Court of Appeals for the Fifth Circuit.

### 3. Industry Standards

With respect to Plaintiffs' second contention that the court erred by excluding evidence of industry standards, Plaintiffs do not cite to any ruling where such evidence was excluded, so it is difficult for the court to ascertain the exact basis for this argument. Nonetheless, the court determines that Plaintiffs' previous representations to the court has foreclosed this argument. In its response to Defendant's motion to compel information about other insurers, Plaintiffs solemnly declared, "Paragon does not and will not rely on bills and communications with other insurers to prove its claims against [Defendant]. Therefore, [Defendant's] effort to compel these documents is unwarranted; the documents are irrelevant and will not be used at trial." (01/07/13 Pls.' Resp. to Def. Mot. to Compel at 12 (Doc. 143)). The court did not err, as Plaintiffs successfully sought to exclude such information during discovery. For Plaintiffs to take an inconsistent position smacks of gamesmanship and legal prestidigitation. The magistrate judge relied on Plaintiffs' representation and held that Defendant could not pursue the requested discovery. Judicial estoppel forecloses Plaintiffs' later position that is inconsistent with their prior position and was relied upon by the magistrate judge in making her ruling regarding discovery on the issue. Allowing Plaintiffs to change their earlier position relied on by the court would have resulted in legal prejudice to Defendant.

Last, the court did not error by excluding a jury instruction that the industry standards are relevant in determining whether an implied contract exists. The court stands by the jury instructions given, as they adequately and correctly reflect the law as to all issues submitted to the jury. Furthermore, there was no evidence presented at trial that related to industry standards; therefore, an instruction about industry standards was unnecessary and would have been confusing and misleading to the jury.

Plaintiffs have chosen to not file a principled motion aimed at specific points. They have taken a shotgun approach, hoping that something would strike its target. None of the arguments raised by Plaintiffs has merit. Accordingly, the court determines that Plaintiffs have not raised any error that warrants it to grant them a new trial, and their motion will be **denied**.

### III. Defendant's Motion to Alter or Amend Judgment to Include Prejudgment Interest

Defendant requests $283,854.15 in prejudgment interest for its money-had-and-received counterclaim pursuant to Rule 59(e). Plaintiffs respond by maintaining that judgment should not be entered on the verdict for reasons previously stated; however, they agree that Defendant is entitled to prejudgment interest under Texas common law if the court denies their motions. Plaintiffs, however, contend that Defendant's prejudgment interest calculation should not include interest for the day judgment was entered, as the Texas Finance Code § 304.104 states that the accrual of "prejudgment interest end[s] on the day preceding the date judgment is rendered."

The court did not include prejudgment interest in the final judgment because Defendant did not include it in their Proposed Judgment, had this been done, the court could have made it part of its original judgment. (*See* Def.'s Resp. to Pls.' Proposed J. Ex. A, ECF No. 398). Since the parties agree that Defendant is entitled to prejudgment interest if the court enters judgment in its favor, the court will modify the Final Judgment to include prejudgment interest. The court, however, will only allow prejudgment interest until October 18, 2016, the day before judgment was originally rendered.

### IV.   Conclusion

For the reasons stated herein, the court **denies** Paragon Parties' Rule 50 Motion for Judgment As A Matter of Law, and in the Alternative, Rule 59 Motion for New Trial; **denies** Paragon Parties' Rule 59 Motion for New Trial; and **grants** Defendant's Motion to Alter or Amend Judgment to Include Prejudgment Interest.  Plaintiffs' interest calculation shall exclude October 19, 2016, and Defendant **shall** update their interest calculation to reflect this change by **5:00 p.m. on February 7, 2017,** so that the court can enter an amended judgment.

**It is so ordered** this 1st day of February, 2017.

Sam A. Lindsay
United States District Judge